479 So.2d 241 (1985)
STATE of Florida, Appellant,
v.
David CALHOUN, Appellee.
No. 84-2081.
District Court of Appeal of Florida, Fourth District.
December 4, 1985.
*242 Jim Smith, Atty. Gen., Tallahassee, and Robert L. Teitler, Asst. Atty. Gen., West Palm Beach, for appellant.
Michael Dubiner of Dubiner & Blumberg, P.A., Boynton Beach, for appellee.

ON REHEARING
BARKETT, Associate Judge.
We grant the petition for rehearing, vacate the prior opinion and substitute therefor the following:
The trial court granted David Calhoun's motion to suppress statements, admissions and confessions. The State of Florida appeals. We affirm.
The defendant was in jail on an unrelated charge when he became a suspect in this case. The trial court's findings of fact relate the pertinent events:
[T]he defendant was taken from his cell at the jail to another building where he was placed in an interview room equipped with a videotape camera that was concealed above the ceiling... . Detective William Springer informed the defendant of his Miranda rights ostensibly preparatory to discussing a pending, unrelated robbery charge. The defendant was not informed that he was a suspect in the instant charges. However, the defendant asked to speak with his brother, McCall Calhoun (who was also confined in the county jail on unrelated charges), before making a statement. Thereupon, McCall Calhoun was placed in the interview room for a private conversation with the defendant. Detective Springer and others monitored the "private" conversation from outside the room, but did not videotape the conversation. Needless to say, neither brother was aware that their conversation was being monitored and neither was aware of the concealed videotape camera, nor had either consented thereto. After about five minutes, Springer terminated their conversation by removing McCall Calhoun to a nearby "holding cell". Springer then entered the interview room and again gave the defendant his Miranda rights. The defendant invoked his right to remain silent and asked to see his public defender. Accordingly, the attempted interview was terminated and Springer left the room. The defendant remained in the room alone.
Springer and other officers discussed their strategy for about "two minutes". At the suggestion of Deputy Ugliano, McCall Calhoun was again placed in the *243 interview room with the defendant so that their conversation could be monitored "for investigative purposes, not just for security", according to the testimony of Springer. That conversation lasted about fifteen minutes and was videotaped, both audio and visual. Needless to say, there was no court order authorizing the intercept and neither brother had consented thereto. [Emphasis added.]
We agree with the state that the defendant usually would not have a reasonable expectation of privacy in the "jailhouse" or even in the interview room. However, we agree with the trial judge that the cases cited by the state are distinguishable on this record. The facts of this case reveal that the defendant had a clear expectation of privacy because such an expectation was deliberately fostered by the police officers. In this case, the defendant's response to hearing his Miranda rights was that he would like to talk to his brother privately before talking to the officers. The police ostensibly complied with his request, brought in his brother, and exited the room giving every indication that the conversation was to be secure and private. Consequently, it was a justified expectation of privacy.
Furthermore, and perhaps even more significantly, after the first conversation the defendant specifically exercised his right to remain silent and his right to counsel. Not only were these rights totally ignored by the police but the officers circumvented them by bringing the brother back into the room and then taping the conversation which is the subject of the motion to suppress. To rule that under these circumstances the defendant's statements to his brother are admissible is to make a mockery of the Miranda rights. Judge Harper's order of suppression expresses clearly, cogently, and eloquently the reasons why the statements should be suppressed. We cannot improve on it and therefore incorporate and adopt it as part of our opinion.
The State has failed in its burden to demonstrate the admissibility of the videotape recording or the above quoted relevant portion thereof. An interception is per se unreasonable unless a warrant has been obtained or unless a constitutionally permissible exception has been shown by the State. Tollett v. State, 272 So.2d 490 (Fla. 1973) and Chiarenza v. State, 406 So.2d 66 (4 DCA 1981).
Wiretapping and other forms of eavesdropping have historically been repugnant to the American people who place a high value on the right of privacy. The right of privacy is guaranteed to all people in the Fourth Amendment to the United States Constitution, as well as Article I, sections 12 and 23 of the Florida Constitution. In fact, Article I, section 12 expressly provides:

"The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures, and against the unreasonable interception of private communications by any means, shall not be violated"... (emphasis mine)
Furthermore, section 934.03, Florida Statutes, makes it unlawful for any person (including law enforcement officers) to wilfully intercept, use or disclose any wire or oral communication, or to endeavor to do so or procure another to do so, punishable by five years imprisonment in the State Prison, with certain exceptions not applicable under the evidence herein. The consent exception in the Florida statutes is more restrictive than its federal counterpart. As noted above, there was no court order authorizing this intercept and neither conversant had knowledge of or had consented to the intercept. The statutes protect the conversants, not the party who makes the illegal intercept. State v. News-Press Publishing Company, 338 So.2d 1313 (2 DCA 1976) and State v. Walls, 356 So.2d 294 (Fla. 1978). In addition to the felony sanctions, section 934.06 expressly provides that no part of the contents of illegally intercepted communications and no evidence derived therefrom may be received in evidence *244 in any proceeding. See for example Horn v. State, 298 So.2d 194 (1 DCA 1974), and State v. Walls, supra.
The Fourth Amendment guarantees protect people, not places, and, more particularly, it protects people from unreasonable government intrustion [sic] into their legitimate expectations of privacy. Katz v. United States, [389 U.S. 347] 88 S.Ct. 507 [19 L.Ed.2d 576] (1967) and United States v. Chadwick, [433 U.S. 1] 97 S.Ct. 2476 [53 L.Ed.2d 538] (1977). Obviously, the defendant did not have a reasonable expectation of privacy in the interview room itself under the search provisions of either Constitution. Nevertheless, the defendant did have a reasonable expectation that his conversation with his brother was secure and private, guaranteed to him by the Florida Constitution and statutes cited above. The emphasized portion of Article 1, section 12 quoted above guarantees against unreasonable interceptions of private communication regardless of where they occur. In construing Article 1, section 12, as amended in 1968, the Florida Supreme Court stated:
"In Florida, at least, the protection of privacy in the area of communications is constitutionally mandated in express language...
"Time and again, courts have held individuals' rights cannot be sacrificed to enable officers to conduct `fishing expeditions'...
"We are concerned about such activity. If it is uncontrolled, it has no place in a free state. The right to freely enter into private conversations without fear of having those conversations overheard and recorded is an important one." (emphasis mine) Tollett v. State, 272 So.2d 490, 493-494 (Fla. 1973).
See also Morningstar v. State, 405 So.2d 778 (4 DCA 1981), decision approved in 428 So.2d 220 (Fla. 1982), certiorari denied in [464 U.S. 821] 104 S.Ct. 86 [78 L.Ed.2d 95]. It is the private conversation that is protected! The fact that the conversation took place in an interview room of the Detective Bureau does not diminish that protection. The State contends that the defendant did not have a reasonable expectation of privacy in the area where the conversation took place (the interview room), and that the intercept was lawfully permitted as a security measure, citing Brown v. State, 349 So.2d 1196 (4 DCA 1977) and its companion case, Stanley v. State, 350 So.2d 475 (4 DCA 1977) habeas corpus denied in Stanley v. Wainwright, 604 F.2d 379 (5th Cir.1979); Hyland v. Wainwright, 356 So.2d 14 (4 DCA 1977); and DiGuilio v. State, 451 So.2d 487 (5 DCA 1984). However, none of those controlling appellate court decisions discussed the Article I, sections 12 and 23, protections of the Florida Constitution cited above, but were decided on Fourth and Fifth Amendment principles.
With all due respect to the appellate courts, the controlling facts of the instant case are materially distinguishable from those in the cases relied upon by the State. For instance, those cases all involved the surreptitious tape recording, without consent or court order, of conversations between codefendants who were confined in the back seat of a police car. This defendant (unlike those in the cases cited by the State) had expressly invoked his Fifth Amendment right to remain silent and his Sixth Amendment right to counsel. Instead of providing the defendant with an attorney, the Sheriff's agents took it upon themselves to send the defendant's brother, McCall Calhoun, into the interview room. In doing so, it was reasonably predictable and foreseeable that the two brothers would freely converse with each other about their respective cases, reasonably believing that their conversation was private. The law anticipates and recognizes that close relatives will aid one another in a time of strife and need, even if illegal. For example, a brother is immune from prosecution as an accessory after the fact to a felony committed by his brother. See section 777.03, Florida *245 Statutes. In effect, McCall Calhoun became the unwitting agent of law enforcement and through him the Sheriff's agents vicariously initiated and participated in an "interrogation" of the defendant who had just invoked his constitutional right to remain silent and to counsel. The Sheriff's agents were constructively present in the interview room via the concealed videotape camera. In doing so, the Sheriff's agents were able to accomplish indirectly what they could not legally accomplish directly. The State's contention that the intercept was justified as a security measure is a subterfuge. The State offered no proof that the brothers were armed or that weapons were available to them in the interview room, or that they could readily escape from the room.
Based on the totality of circumstances, the defendant's Amended Motion to Suppress Statements, Admissions and Confessions [should be] granted on the following severable grounds:
1. First and foremost, the videotaping was an unreasonable interception of the defendant's private communication with his brother in violation of Article I, sections 12 and 23, of the Florida Constitution.
2. The videotaping was an unlawful interception of an oral communication in violation of section 934.03, Florida Statutes, and must be excluded from evidence pursuant to section 934.06, Florida Statutes.
3. The videotape was obtained in violation of the defendant's Fifth Amendment right to remain silent and must be suppressed pursuant to Miranda v. Arizona, 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694] (1966).
4. The videotape was obtained in violation of the defendant's Sixth Amendment right to counsel and must be suppressed pursuant to Edwards v. Arizona [451 U.S. 477] 101 S.Ct. 1880 [68 L.Ed.2d 378] (1981). [Emphasis added.]
GLICKSTEIN, J., concurs specially with opinion.
WALDEN, J., dissents with opinion.
GLICKSTEIN, Judge, concurring specially.
This court's preliminary consideration of the defendant's motion for en banc consideration made this writer feel like the mule which the farmer kept hitting over the head with a board to get its attention. Finally.
What the writer had forgotten in joining in this court's original majority opinion was one of the basic tenets of justice; namely, that all of us involved in its administration  law enforcement officers, lawyers and judges  must play by the rules.
The rule in this case originated with the defendant's declaration to the law enforcement officers that he was exercising his constitutional right to remain silent and his right to see and communicate with a public defender. All of us in the process must respect both rights and proceed in accordance with that respect. If not, then the uniqueness of America disappears, and we become like most of the world beyond our borders.
We are not throwing out the baby with the bathwater in approving the suppression of the videotape. An able prosecutor finds legitimate ways to prosecute suspects successfully with lawfully obtained evidence. Without the latter, there cannot be any lawful prosecution. Changing the rules means changing the name of the nation.
Judge Harper's high voltage expressions then, are appropriate; and Judge Barkett's sensitive antennae have effectively put theoretical concerns for individual rights into practical implementation.
Law enforcement officers should not consider this outcome as a naive, roseate picture of their obstacles in acting as society's surrogates to apprehend the guilty. Further, they should not consider it as throwing cold water on their creative efforts to outwit, outthink and out-maneuver the guilty by whatever devices are available to them within the rules. Had the suspect in *246 this case not exercised his rights to remain silent and to request counsel, the videotape would have been lawfully obtained evidence.[1]
WALDEN, Judge, dissenting.
I continue to adhere to the views expressed in the original per curiam opinion which was filed on September 18, 1985. Accordingly, I would reverse the order of suppression.
NOTES
[1] Cf. United States v. DeRobertis, 771 F.2d 1015, 1018 (7th Cir.1985) (defendant's written confession was admissible despite his allegation that the police improperly obtained it because the defendant could not invoke his Miranda rights in the absence of a "custodial setting").