# STATE OF FLORIDA v ROSA, et al.

## Case No. G88-1605-CFB

Eighteenth Judicial Circuit, Seminole County

November 16, 1988

### APPEARANCES OF COUNSEL

**Patricia E. Bologna,** Assistant State Attorney, for plaintiff.

**Donald A. Lykkebak,** for defendant.

### OPINION OF THE COURT

C. VERNON MIZE, Circuit Judge.

### *ORDER SUPPRESSING EVIDENCE DERIVED FROM UNLAWFUL ELECTRONIC SURVEILLANCE*

THIS CAUSE having come to be heard upon Motion of Defendant, RICKY ROBERT ROSA, filed pursuant to *Fla.R.CrimlP.* 3.190 and Section 934.09, *Florida Statutes,* and the Court after evidentiary

hearing conducted November 1, 1988, upon consideration of the facts adduced at hearing and the applicable law, does now enter this Order of suppression and makes the following findings of fact:

1. The evidence has established that on June 16, 1988, Agents K. J. Negri and Chris Scott, Seminole County deputies assigned to the City/ County Investigative Bureau, conducted surveillance at the intersection of Teakwood and Jackson Streets in South Seminole County.

2. Both agents concealed themselves from all observers by hiding in high weeks located on a vacant lot near the intersection. They were disguised in camouflage gear and had black hoods over their faces to conceal themselves in the darkness.

3. Agent K. J. Negri was equipped with electronic surveillance equipment described by him as a "bionic ear" or amplified microphone. The bionic ear was described as a dish-like hand-held apparatus similar to an amplifying microphone familiar to many along the sidelines of football games. It was equipped with batteries and a wire ran from the dish-like microphone to a set of head phones.

4. Utilizing the bionic ear, Agent K. J. Negri was able to eavesdrop on conversations many feet away from him that he could not otherwise hear.

5. On the evening in question, the Agents used the bionic ear to eavesdrop on conversations of Defendant and others at the intersection of Teakwood and Jackson Streets estimated to be 75 to 100 feet away.

6. Some time after 9:30 P.M., Negri and Scott observed Defendant's vehicle pull up to the intersection. An unknown black male hailed the vehicled and it pulled over. The black male approached the car on foot and leaned over at the driver's window to speak to the occupants.

7. Using his bionic ear, Agent K. J. Negri was able to hear the unknown black male say, "What you need," or words to that effect. There was other indiscernible conversation intercepted, but Negri additionally heard what he believed to be a male voice say, "The piece is too small," or words to that effect. Although Negri believed that male voice came from an occupant of the vehicle, he could not say for sure and conceded at hearing that this remark could have been from another person standing in the vicinity of Teakwood and Jackson. The black male walked away and the car drove off.

8. From their position of observation the agents could clearly see very little. They couldn't tell how many people were riding in Defendant's Camaro, nor could they discern whether a male or a female was driving. Further, they were unable to observe the race of any of the

158

occupants, i.e., whether they were white or black. Neither Negri nor Scott could testify that they saw any money exchange hands or contraband delivered.

9. Based on the content of the conversation eavesdropped by K. J. Negri's bionic ear, the officers believed they had probable cause to stop the vehicle and search it for contraband. Accordingly, Negri told Scott what he had heard and Agent Scott radioed to Agent John Negri, who was involved in peripheral surveillance. John Negri had seen or heard nothing of what had transpired at Teakwood and Jackson Streets. Agent Scott radioed to John Negri that a drug transaction had just taken place involving the Camaro and Agent John Negri pulled the vehicle over several blocks away, removed the occupants, RICKY ROBERT ROSA and his wife, Elba. With the assistance of Agent Weippert and Deputy Sheriff William Shaffer, a warrantless search was conducted of the Camaro which resulted in the seizure of a small rock of crack cocaine, described by Deputy Shaffer to be approximately one-quarter the size of a pea.

10. The warrantless search which resulted in the seizure of the contraband was based completely on the alleged probable cause derived from the surveillance of Scott and K. J. Negri and including specifically, the bits of conversation reported by Negri and recited above.

11. The Court specifically finds that the "bionic ear" or amplified microphone is a device as defined by Section 934.02(4), *Florida Statutes,* in that it is an electronic, mechanical or other device or apparatus which can be used to intercept a wire or oral communication. The Attorney General's Opinion 074-67, March 1, 1974, is persuasive and it seems that this device is analogous to the "shotgun mike" described in that opinion.

12. The Court also specifically finds that the conversation between the black male and the occupants of Defendant's vehicle was, in fact, an oral communication as defined by Section 934.02(4), *Florida Statutes.* Both the black male and the persons in the vehicle had a reasonable expectation of privacy and exhibited an expectation that their communication would not be subject to interception under circumstances which justify that expectation. In this case with the black male leaning over to the driver's window and given the circumstances and alleged content of the conversation, it is absurd to think that the participants would expect it to be anything but private.

13. When Agent K. J. Negri eavesdropped on that conversation that constituted an intercept as defined by Section 934.02(3), *Florida Statutes,* which is any aural acquisition of the contents of any oral

**159**

communication through the use of any electronic, mechanical or other device. That intercept was executed by Agent K. J. Negri without the benefit of prior Court Order specifically required by Chapter 934, *Florida Statutes.* None of the targets of the interception consented to the intercept.

14. The law in Florida is clear when any oral communication has been intercepted unless that interception has been completed in conformity with Chapter 934 and by Court Order, no part of the contents of that communication or evidence derived therefrom may be received in evidence in any trial, hearing or other proceeding in or before any Court. Section 934.06, *Florida Statutes.* Suppression of the oral communication and the fruit of the search which resulted is therefore, mandated.

15. In entering this Order the Court is not unmindful of the fact that Agents K. J. Negri and Scott were clearly equipped to hear not only the relevant conversation of Defendant ROSA and his wife, but also the conversations of all persons who frequented the intersection of Teakwood and Jackson Streets on the evening of June 16, 1988. This means pedestrians as well as passengers in other passing motor vehicles that might stop to speak with persons on or about the street corner. There were, in fact, such pedestrians in the vicinity of the corner during the relevant period of observation standing around or walking by while Defendant's vehicle was pulled over. All of those persons were likewise subject to potential surveillance and like Defendant ROSA and his wife, had the same reasonable expectation of privacy. The Fourth Amendment to the United States Constitution, as well as Article 1, Section 12 of the Florida Constitution, protects people, not just places. More specifically, the Constitution protects people from unreasonable government intrusion into their legitimate expectations of privacy. *Katz v United States,* 389 U.S. 347, 88 S.Ct. 507 (1967); *State v Calhoun,* 479 So.2d 241 (4th DCA 1985). If the Fourth Amendment protects a person's private conversations against the uninvited ear as the U. S. Supreme Court announced in *Alderman v United States,* 394 U.S. 165 (1969); then certainly the agents of the C.C.I.B. were such an uninvited ear which cannot be permitted without Court Order. Therefore, it is

ORDERED AND ADJUDGED that the oral communications intercepted, the evidence derived from the search conducted by Agents John Negri, Michael Weippert and Deputy William Shaffer, as well as the evidence of arrest arising therefrom are all suppressed and shall not be admitted into evidence at trial or hearing.

Counsel for Defendant's wife, Elba Rosa, having moved the Court to

join in Defendant's motion and the Court having permitted such joinder, this Order of suppression is equally applicable in *State of Florida v Elba Rosa, Case No. G88-1605-CFA.*

Because this Order of Suppression is dispositive the Court need not rule on Defendant's secondary argument for suppression also presented and therefore, declines to do so.

DONE AND ORDERED in Chambers at Sanford, Seminole County, Florida, this 16th day of November, 1988.