980 So.2d 1200 (2008)
Victor PESTANO, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D07-260.
District Court of Appeal of Florida, Third District.
April 30, 2008.
Rehearing Denied May 30, 2008.
Ronald S. Guralnick, Miami, for appellant.
Bill McCollum, Attorney General, and Lisa A. Davis, Assistant Attorney General, for appellee.
Before COPE and GREEN, JJ., and SCHWARTZ, Senior Judge.
GREEN, J.
Victor Pestano appeals his convictions and sentences for first degree murder without a firearm; sexual battery without a firearm; kidnapping without a firearm; and robbery carjacking without a firearm. We find no merit to the issues raised on appeal and affirm.
In 1995, the victim's body was found in the trunk of her automobile, submerged in a canal. An autopsy revealed that the victim died from blunt trauma to the head and from drowning. The autopsy also revealed *1201 the presence of semen in the victim's vagina. Miami-Dade police detectives investigated this case for a period of time, but were unable to develop any leads or clues as to the perpetrator(s).
In 2003, the police received a call implicating Pestano and co-defendant Dulie Alonzo Green, Jr., in this crime. The informant gave the police a sworn statement that these men had admitted to abducting, robbing, and raping the victim. The police got a search warrant to obtain saliva samples from the men for DNA testing.
The police went to Pestano's house to serve the warrant. Pestano was not home when the officers arrived; they decided to wait. When Pestano arrived, the police identified themselves and asked Pestano to accompany them to the station. Pestano asked to change his clothes; thereafter, at about 6:30 a.m., he rode to the station with the officers.[1] The detective did not produce the search warrant and did not rely on it.
At the station, Pestano was placed in a wired interview room. Pestano was read his Miranda rights. He signed a written waiver and consented to providing a DNA sample. At about 7:40 a.m., the police began interrogating Pestano and the codefendant separately. Each man gave opposing accounts of the events: each said that he picked the other man up in a car with an unknown female passenger in the front seat. Each claimed he had sex with the female in exchange for the other man letting her go; each said he left, leaving her with the other man.
Pestano asked to speak with Dulie Green. The police permitted the men to speak to each other. They were placed in a room together; their conversation was video and audio taped. The men agreed to a version of the story that placed the blame on a third person, who was deceased. They agreed to say that they left the victim alone with the third person.
After the co-defendants conferred, they were again interviewed separately. Pestano was re-advised of his Miranda rights. After further interrogation, Pestano gave a sworn statement. The statement contained Pestano's original statement and the purportedly "true" version: The codefendants were walking with a third man. The third man jumped into the woman's car and ordered them to get in front. The three men drove to the park where the codefendants got out of the car. Thereafter, the third man got out of the car and said the victim had agreed to have sex with them. The co-defendants then departed, leaving the victim with the third man. At that point, the interrogation concluded.
Prior to trial, Pestano filed a motion to suppress or exclude the video/audio tape of the conversation between the co-defendants, a motion to suppress or exclude the confession, and a motion to suppress/exclude the statements and evidence based on an unlawful arrest. At the hearing on the motions, the court found that Pestano was not arrested when he was picked up at his house, and denied the latter motion accordingly. The court denied the motion to suppress the videotaped conversation on the grounds that there was no expectation of privacy in a police interview room and that the admission of the tape did not deprive Pestano of his right of confrontation.
At trial, the state presented DNA evidence, physical evidence from the crime scene and forensic evidence regarding the murder. Pestano's defense was that he *1202 merely had consensual sex with the victim. Pestano requested that the court give an independent act jury instruction. The court declined the request. The jury convicted defendant as charged, without a firearm. Defendant appeals.
As his first issue on appeal, Pestano argues that the trial court erred in denying his motion to suppress/exclude his video/audio taped conversation with the codefendant and erred in denying his motion in limine regarding this video/audiotape. We disagree.
The trial court properly denied the motions to suppress as to the taped conversation at the police station. The record demonstrates that Pestano adopted the codefendant's statements as his own. Globe v. State, 877 So.2d 663 (Fla.2004)(revised opinion). Hence there was no error in admitting the conversation into evidence.[2]
Moreover, the defendant had no reasonable expectation of privacy in the conversation held in the police interrogation room. Larzelere v. State, 676 So.2d 394 (Fla.1996); Bedoya v. State, 779 So.2d 574 (Fla. 5th DCA 2001). Contrary to defendant's assertion, this case is distinguishable from State v. Calhoun, 479 So.2d 241 (Fla. 4th DCA 1985). The Calhoun defendant was read his Miranda rights and he asked to speak privately with his brother. The police agreed but monitored the conversation. After the conversation, the defendant was again given his Miranda rights. Defendant immediately invoked his right to remain silent and asked to speak with his attorney. Thereupon the police brought the brothers back together so their conversation could be monitored again and taped. The Calhoun court held that although a "defendant usually would not have a reasonable expectation of privacy in the `jailhouse' or even the interview room," Calhoun, 479 So.2d at 243, given the fact that Calhoun had invoked his right to remain silent and to speak with an attorney, Calhoun did have a "justified expectation of privacy." Id. Nothing giving rise to such an expectation occurred in this case.[3]
As to Pestano's second issue on appeal, we conclude that the trial court did not abuse its discretion in denying the motion to suppress the written statement. *1203 There was no constitutional infirmity in the taping of the men's conversation, see supra, therefore, there can be no finding that the subsequent written statement, preceded by re-advising the defendant of his Miranda rights, is the fruit of the poisonous tree.
As to the last issue, we conclude that the court properly denied Pestano's request for an independent act jury instruction. Ward v. State, 568 So.2d 452, 453 (Fla. 3d DCA 1990); Boyd v. State, 912 So.2d 26, 27 (Fla. 4th DCA 2005). See Ray v. State, 755 So.2d 604, 609 (Fla.2000). Denying any involvement in a crime, which was defendant's theory at trial, as supported by his testimony, negates the propriety of an independent act instruction. Boyd, 912 So.2d at 27; Ward, 568 So.2d at 453. Hence, this argument has no merit.
Based on the foregoing, we affirm the convictions and sentences.
Affirmed.
NOTES
[1] The detective testified at trial that Pestano was not under arrest at the time he was transported. Although the detective had testified at deposition that Pestano was arrested, based on a notation in the police report, at trial he clarified that this was not the case.
[2] We find no abuse of discretion in the trial court's finding of fact that the defendant was not arrested when he went to the police station. Defendant went voluntarily, and the record demonstrates he was properly advised of his rights, he signed a proper waiver and he answered the questions voluntarily. Smith v. State, 424 So.2d 726, 729-30 (Fla. 1983); Bedoya v. State, 779 So.2d 574, 578-79 (Fla. 5th DCA 2001).
[3] Additionally, State v. Hernandez, 875 So.2d 1271 (Fla. 3d DCA 2004) (Hernandez I), does not require reversal. This court's Hernandez I opinion was issued June 16, 2004. In its discussion of the Confrontation Clause, this court discussed the Florida Supreme Court's March 18, 2004, opinion in Globe v. State, 877 So.2d 663 (Fla.2004). Hernandez I, 875 So.2d at 1273 (citing March 18 version). This court concluded that, based on the just-released decision of the United States Supreme Court in Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), admission of the co-defendant's out-of-court statements would violate the Confrontation Clause. 875 So.2d at 1273.

On July 1, 2004, the Florida Supreme Court issued a revised opinion in Globe v. State, 877 So.2d 663 (Fla.2004) which modified the discussion of the Confrontation Clause. Globe, 877 So.2d at 672-73. The revised Globe opinion addressed Crawford v. Washington, and held that "statements admitted as adoptive admissions do not implicate the Confrontation Clause." Globe, 877 So.2d at 673. The revised opinion in Globe is, of course, controlling regarding the Confrontation Clause to the extent of any inconsistency with this court's earlier Hernandez I decision. See Hernandez v. State, 979 So.2d 1013, 1016 (Fla. 3d DCA 2008) (Hernandez II).