SWANSON, J.
Jeremiah Samuel Cuomo (“appellant”) appeals his convictions for aggravated battery causing great bodily harm and disfigurement as a result of his possessing and discharging a firearm, and for shooting into an occupied dwelling. He argues the trial court erred in not suppressing incriminating statements he made to his mother during a jail visitation, which statements were secretly recorded by law enforcement. We conclude the trial court did not err in denying appellant’s motion to suppress because competent and substantial evidence supported its conclusion that the police did not deliberately foster an expectation of privacy in appellant’s conversation with his mother. For this reason, we affirm.[1]
*1277 Appellant was arrested on April 4, 2009, and was read his Miranda[2] rights at the Bay County jail. He immediately invoked his right to remain silent and to see an attorney. At this point, all questioning by law enforcement officers ceased. Hours after appellant’s arrest, however, Investigator Pitts received information that appellant’s mother wanted to speak to her son concerning the details of his arrest. He arranged for the visitation to take place in a room located in the Warrants Division of the jail, and enlisted the assistance of Deputy Stephens to conceal a tape-recorder in a drawer in the room so appellant could not see it, in order to tape the conversation between him and his mother.
Once the interview room was wired, Investigator Pitts directed that appellant’s mother be escorted to the room. Appellant, wearing handcuffs and leg shackles, was led to the interview room by Lieutenant Gresko. Lieutenant Gresko testified she did not tell appellant he would be having a private conversation with his mother. Indeed, she testified the word “privacy” was never uttered by her. She also clarified that inmates are brought to the Warrants Division interview room constantly, on a daily basis, for police interviews. Deputy Stephens testified the room was also used for visitation, and stated there were cameras throughout the jail, although they did not have the capacity to record audio in the Warrants Division. Though pressed by defense counsel as to what she had said to appellant regarding the degree of privacy he could expect in meeting with his mother, Deputy Stephens ultimately acknowledged to the trial court that she could not recall with certainty anything she had said prior to the visitation, to either appellant or to his mother, but she did admit she did not inform appellant that his conversation would be private.
Once appellant was placed in the room his leg shackles were removed and he was handcuffed to the chair. The door was closed and dead-bolted, but no officer was stationed outside the door. Appellant testified that when he was seated in the interview room, he was under the impression, from what law enforcement had told him, that he would be having a private conversation with his mother. Nevertheless, he conceded he was never verbally told the conversation would be private; it was just an assumption. He also admitted from his previous experience of being incarcerated in jail, that he knew he had no expectation of privacy there. He also clarified it was not he who had requested the visit by his mother.
At the close of the testimony, the trial court ruled the critical issue was whether appellant had possessed an expectation of privacy during the visitation with his mother, whether that expectation was a subjective one, and whether it was an expectation society would recognize as reasonable. The trial court added' that it mattered who had initiated the visit. In this latter regard, the trial court noted the evidence showed it was the mother who had requested visitation, and Investigator Pitts had simply accommodated her request, while at the same time using it as an opportunity to tape the conversation. In the court’s mind, that action did not amount to improper police conduct. While the trial court acknowledged the law generally prohibits intrusion into privileged or otherwise confidential or private communication, it nonetheless called attention to the fact that even appellant candidly admitted that no one had used the word “privacy” or told him he was entitled to *1278 special treatment. The trial court reflected on the fact that appellant had thought, at the time, he was privately visiting his mother, but concluded appellant’s assumption of this detail was not supported by the evidence and, thus, did not serve to impart to appellant a subjective, reasonable belief that the conversation would be private, or lead to the conclusion that law enforcement had done anything wrong. Accordingly the trial court denied appellant’s motion to suppress. In doing so, the court distinguished the circumstances in this case from those in State v. Calhoun, 479 So.2d 241 (Fla. 4th DCA 1985), rationalizing there was no deliberate attempt by the police to circumvent appellant’s rights here, as there had been in Calhoun.
We treat a trial court’s ruling on a motion to suppress as being “‘clothed with a presumption of correctness and, as the reviewing court, we must interpret the evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustaining the trial court’s ruling.’ ” Connor v. State, 803 So.2d 598, 605 (Fla.2001) (quoting Murray v. State, 692 So.2d 157, 159 (Fla.1997)). “A trial court’s ruling on a motion to suppress is a mixed question of law and fact that ultimately determines constitutional rights and should be reviewed using a two-step approach — deferring to the trial court’s findings of fact as long as they are supported by competent, substantial evidence, but reviewing de novo a trial court’s application of law to the historical facts.” Delhall v. State, 95 So.3d 134, 134 (Fla.2012). We conclude the facts as found by the trial court in the instant case are based on competent and substantial evidence in the record. The decisive issue for our resolution is whether, as appellant argues, the trial court’s application of those historical facts to the law resulted in its erroneous decision to deny appellant’s motion to suppress and, consequently, to admit at trial the incriminating statements he made while speaking with his mother. Appellant claims, contrary to the trial court’s conclusion, that the police conduct here, expressly coordinated to conceal from him the recording of his conversation, violated not only his Fifth Amendment right under the United States Constitution, but his right to privacy as protected by article I, sections 12 and 23 of the Florida Constitution. In addition, appellant urges the statements were inadmissible as being the result of an illegal interception and disclosure of oral communications, prohibited by section 934.03, Florida Statutes. For the reasons expressed below, we disagree.
In State v. Smith, 641 So.2d 849 (Fla.1994), the supreme court addressed similar arguments propounded by Smith, a passenger in a car pulled over for swerving erratically, who, for safety reasons, was placed along with the driver in the back seat of the patrol car. Without the knowledge of either Smith or the driver, their subsequent conversation in the patrol car was being taped by a concealed recorder. In considering Smith’s various arguments based on privacy, the supreme court initially concluded that Florida’s constitutional protection of Smith’s right to privacy found in article I, section 23, was not implicated. Instead, the supreme court turned to Smith’s right to privacy afforded by article I, section 12, and, by virtue of that section, the privacy interests protected by the Fourth Amendment to the United States Constitution. In doing so, the supreme court enunciated the test that would form its analysis, that (1) “the person must have a subjective expectation of privacy”; and (2) “that expectation must be one that society recognizes as reasonable.” Id. at 851 (citing Katz v. United States, 389 U.S. 347, 360, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring)). Although *1279 Smith had not been placed in custody, which required the supreme court to apply “a different analysis” to reach the conclusion “that a person does not have a reasonable expectation of privacy in a police car,” id. at 851-52, relevant to our inquiry the supreme court prefaced its holding with the following observation:
Had Smith been placed in the police car for custody purposes, our analysis would be quite simple. A prisoner’s right of privacy fails both prongs of the Katz test. First, a prisoner’s privacy interest is severely limited by the status of being a prisoner and by being in an area of confinement that “shares none of the attributes of privacy of a home, an automobile, an office, or a hotel room.” ... Second, “society would insist that the prisoner’s expectation of privacy always yield to what must be considered the paramount interest in institutional security.” ... Thus, “the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell.” ... Courts have also determined that a person in custody in the back of a police car has no right of privacy because that person is essentially a prisoner.
Id. at 851 (citations omitted). See also Lanza v. New York, 870 U.S. 139, 143, 82 S.Ct. 1218, 8 L.Ed.2d 384 (1962) (“In prison, official surveillance has traditionally been the order of the day.”).
On the subject of section 934.03, the supreme court focused on the statutory phrase requiring the oral communication to be “ ‘uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation Id. at 852 (citing to section 934.02(2), Florida Statutes (1991)) (emphasis in original). Accordingly, the court applied the same rule, that is, “for an oral conversation to be protected under section 934.03 the speaker must have an actual subjective expectation of privacy, along with a societal recognition that the expectation is reasonable.” Id. Because it found there is no reasonable expectation of privacy in a police car, the supreme court concluded “section 934.03 does not apply to conversations that take place in those vehicles.” Id.
Appellant, however, argues he did have a reasonable, subjective expectation of privacy in his conversation with his mother because the police conduct in arranging the visitation fostered that expectation. For this proposition, as noted earlier, appellant relies primarily on the Fourth District Court of Appeal’s decision in State v. Calhoun. That decision was addressed and distinguished by the supreme court in Allen v. State, 636 So.2d 494 (Fla.1994), wherein it expressed its view that, “as a general rule, the courts have permitted the use of [evidence gleaned from cellmates’ conversations] where it was electronically recorded, at least in the absence of any factor diminishing the trustworthiness of the conversation such as coercion or trick.” 636 So.2d at 496-97 (citing Williams v. Nelson, 457 F.2d 376 (9th Cir.1972) (holding that a recording, of a conversation between the defendant and his co-defendant—secured without the knowledge of either, by means of a microphone concealed in an interrogation room of the police station where the two were placed alone shortly after the co-defendant had confessed—was not a product of police coercion, since “trickery does not constitute coercion”)). The supreme court went on in Allen to caution:
[0] ur conclusion in this regard rests on the fact that there was no improper police involvement in inducing the conversation nor any intrusion into a privileged or otherwise confidential or private communication. A different result *1280 might obtain otherwise. For example, police impropriety would exist if police deliberately fostered an expectation of privacy in the inmates’ conversation, as happened in State v. Calhoun, 479 So.2d 241 (Fla. 4th DCA 1985), especially where the obvious purpose was to circumvent a defendant’s assertion of the right to remain silent.
Id. at 497 (emphasis added). Allen involved the admission of evidence obtained from electronic eavesdropping of statements Allen and another inmate made in their prison cells. The supreme court concluded those circumstances did not “cross the line of what is permissible.” Id.
Calhoun, in contrast, involved the surreptitious videotaping of a conversation between Calhoun and his brother in the police interrogation room. Calhoun was in jail on an unrelated charge when information arose impheating him as a suspect in another case. At that point, he was taken from his cell at the jail to another building where he was placed in an interrogation room in which a videotape camera was hidden in the ceiling. A detective informed Calhoun of his Miranda rights ostensibly in preparation to discussing the pending charge. Calhoun, however, was not informed of the other charge. Before making a statement, and in response to hearing his Miranda rights, Calhoun requested to speak to his brother privately before talking to the officers. The brother was also confined in the same jail, but on unrelated charges. The brother was brought into the interrogation room in order to have this “private conversation,” which was monitored by the detective and others outside the room. The brother was also unaware of the camera. Five minutes later, the detective terminated the conversation by removing the brother to a nearby holding cell. The detective reentered the interrogation room and again read Calhoun his Miranda rights. Calhoun invoked his right to remain silent and asked to see his attorney. Accordingly, the detective left the room while Calhoun remained there alone, whereupon, after approximately two minutes of discussion, the detective and the other officers decided to again place the brother in the room so that their conversation could be monitored by both audio- and videotaping.
The Fourth District Court of Appeal affirmed the trial court’s suppression of Calhoun’s statements, admissions and confessions obtained from the covert monitoring of his conversation with his brother. In sharply denouncing the police activity involved, and after considering the totality of the circumstances, the Fourth District emphasized:
This defendant ... had expressly invoked his Fifth Amendment right to remain silent and his Sixth Amendment right to counsel. Instead of providing the defendant with an attorney, the Sheriffs agents took it upon themselves to send the defendant’s brother, McCall Calhoun, into the interview room. In doing so, it was reasonably predictable and foreseeable that the two brothers would freely converse with each other about their respective cases, reasonably believing that their conversation was private. The law anticipates and recognizes that close relatives will aid one another in a time of strife and need, even if illegal.... In effect, McCall Calhoun became the unwitting agent of law enforcement and through him the Sheriffs agents vicariously initiated and participated in an “interrogation” of the defendant who had just invoked his constitutional right to remain silent and to counsel. The Sheriffs agents were constructively present in the interview room via the concealed videotape camera. In doing so, the Sheriffs agents were able *1281 to accomplish indirectly what they could not legally accomplish directly.
Id. at 244-45 (emphasis in original).
The Fourth District had occasion to revisit this issue more recently in Cox v. State, 26 So.3d 666 (Fla. 4th DCA 2010), wherein it again condemned law enforcement’s use of a hidden camera to digitally record an entire interrogation. It emphasized Cox was repeatedly and convincingly assured that no recording of the interrogation was being performed, a tactic it found violated Cox’s Sixth Amendment right to counsel, where law enforcement “strategically and surreptitiously inducted] incriminating statements from him after his right to counsel had attached.” Id. at 668. It therefore reversed Cox’s conviction and ordered a new trial “[b]ecause the State affirmatively engaged in conduct that was the functional equivalent of an interrogation during which time [Cox’s] attorney was not present.” Id. Specifically, the Fourth District explained:
Not only did law enforcement officials purposefully create a false illusion of privacy within the interrogation room but, working in concert, designedly utilized a co-defendant to whom they made promises of leniency in exchange for baiting Cox to utter incriminating statements. The seven minute conversation between Cox and his co-defendant should have been encompassed within the trial court’s overall interrogation room suppression order.
Id. at 669. The Fourth District recognized the longstanding rule “that inmates do not have a reasonable expectation of privacy in jail,” and “[t]herefore, most conversations and confessions in a police interrogation room are admissible as evidence.” Id. at 676 (citing Lanza, 370 U.S. at 143, 82 S.Ct. 1218, and Pestaño v. State, 980 So.2d 1200, 1202 (Fla. 3d DCA 2008)). It went on, however, to cite Allen for the exception that “when law enforcement deliberately fosters an expectation of privacy, especially for the purpose of circumventing a defendant’s right to counsel, subsequent jailhouse conversations and confessions are inadmissible.” Id. at 676 (citing Allen, 636 So.2d at 497). The Fourth District then compared the facts before it to those in Calhoun, observing:
The instant case presents similar events. Cox, after invoking his Miranda rights, told Detective Crew that he did not want to talk about the alleged robbery out of fear the conversation was being recorded. Detective Crew then repeatedly and convincingly assured Cox that no such recording was being performed. It was after these assurances that Cox began answering Detective Crew’s questions and subsequently, making incriminatory statements to a co-defendant strategically placed inside the interrogation room by law enforcement officials. These police actions created a reasonable expectation of privacy in the interrogation room and should have led to inclusion of the seven minute jailhouse conversation with the other evidence suppressed at trial.

Id.

In the instant case, there is no debate that law enforcement scrupulously respected appellant’s right to remain silent for an estimated nine to ten hours before his mother requested visitation. In sharp contrast to the assertive involvement of law enforcement exemplified in Calhoun and Cox, wherein the police actively manipulated the circumstances in order to intentionally foster an expectation of privacy in defendants who had distinctly expressed their desire for privacy, here there was no similar orchestration of events to foster an equivalent expectation. Instead, law enforcement simply accommodated the mother’s request to visit appellant. The *1282 police conduct in this case is not even remotely analogous to the police conduct in either Calhoun or Cox. Appellant did not request a meeting with his mother, nor did he request the meeting be private. Furthermore, appellant was not told the meeting would be private. Under these facts, society could not reasonably recognize a subjective expectation of privacy. In other words, we conclude, as did the supreme court in Allen, that the police conduct in “[t]he present case d[id] not cross the line of what is permissible.” 636 So.2d at 497.
Two other decisions are instructive on this point. In Larzelere v. State, 676 So.2d 394 (Fla.1996), Larzelere argued the trial court improperly denied her motion to dismiss the indictment because the state illegally intercepted a conversation between her and her son in a holding cell. Because Larzelere had invoked her constitutional right to remain silent and was represented by counsel before the recording took place, she contended the police acted improperly in recording the conversation. While she acknowledged case law holding a person loses much of his or her right to an expectation of privacy during incarceration, she relied on Calhoun to argue the police, in her case, “fostered the illusion of privacy in placing her and [her son] in the cell together.” Id. at 405. The supreme court, however, succinctly dismissed the notion that there had been any misconduct by observing: “Unlike the situation in Calhoun, appellant did not ask to speak to her son privately; they were simply placed in a cell together before a hearing.” Id. Likewise, in State v. McAdams, 559 So.2d 601 (Fla. 5th DCA 1990), the Fifth District Court of Appeal also distinguished Calhoun, concluding in the case before it the police did nothing to foster an expectation of privacy when, after McAdams invoked his Miranda rights, he was placed in a police car with his co-defendant where their incriminating conversation was secretly recorded by a wireless transmitter.
We find further support for affirmance in Williams v. State, 982 So.2d 1190, 1194 (Fla. 4th DCA 2008), wherein Williams argued that after he invoked his Miranda rights, law enforcement violated those constitutional rights by subsequently recording him in the interview room speaking on a cell phone to a woman who was being held in another interrogation room. This time the Fourth District Court of Appeal affirmed the trial court’s decision not to suppress the statements, observing:
When law enforcement attempted an interview with the defendant, he invoked his right to counsel, and the interview was terminated. The defendant did not ask for privacy, and there was no suggestion that he had any. The trial court did not err when it denied the defendant’s motion to suppress.
Id. at 1194. Similarly, here the police did nothing to manipulate appellant’s visitation with his mother or make assurances that his conversation with her would be private. Accordingly we conclude the trial court did not err in denying appellant’s motion to suppress. Therefore, appellant’s convictions are
AFFIRMED.
ROBERTS and WETHERELL, JJ., concur.

. This appeal concerns appellant's second motion to suppress. In his first motion, appellant sought suppression of evidence seized from his car, a witness’s identification of his car, and the statements made to his mother, arguing his transportation to the Bay County jail amounted to a de facto arrest without probable cause. In two orders, the trial court granted the motion and the state appealed, arguing the police officers had probable cause to arrest appellant at the time he was taken into custody. This Court agreed and reversed the trial court's orders. See State v. Cuomo, 43 So.3d 838, 839-41 (Fla. 1st DCA 2010). Before the mandate issued in that appeal, however, appellant again moved to suppress the statements he made to his mother, but on privacy grounds, as discussed herein.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).