COHEN, J.
Lamont Riley was convicted of first-degree murder for the death of Cecil Mills. Mills was shot after he went to his daughter’s home, interrupting Riley and his co-defendants as they burglarized it. On appeal, Riley argues the trial court erred in failing to suppress the recording of a conversation he had with his girlfriend in an interview room at the police station. We disagree and affirm.
Following the murder, Riley was developed as a suspect and brought to the police station for questioning. After denying involvement in Mills’ death, Riley was released from custody. Law enforcement soon discovered additional evidence inculpating Riley, and he was arrested and once again transported to the police station. Prior to being interviewed, Riley requested that the detective let his girlfriend, Takita Thomas, know what was happening. During the ensuing interview with law enforcement, Riley admitted to being present when the burglary and murder occurred, and stated that his shooting of Mills was *251 accidental.[1]
As the interview was concluding, the detective asked Riley if he wanted his girlfriend to come to the station. Riley responded affirmatively, and the detective called Thomas, allowing her to come to the station with food and cigarettes for Riley. Upon her arrival, Thomas was permitted to take those items to Riley in the interview room wherein the two remained alone. The room was monitored and their conversation recorded. During the conversation, Riley leaned in close to Thomas and whispered. Contrary to the story he told law enforcement, Riley admitted to Thomas that he intentionally shot Mills. Thomas had not been told what to say or ask Riley by law enforcement, and she was unaware that the conversation was being monitored. Riley likewise testified he was unaware that the conversation was being recorded, although the trial court found his actions of leaning forward and whispering to Thomas belied this claim.
Initially, Riley moved to suppress the statement made to law enforcement. The trial court granted the motion based on law enforcement’s failure to honor Riley’s repeated requests for counsel.[2] Riley then moved to suppress the admission made during his conversation with Thomas, arguing a violation of his constitutional rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and a violation of his reasonable expectation of privacy. That motion was denied and Riley was ultimately convicted by a jury.
Riley’s Miranda argument presupposes the functional equivalent of interrogation. See Arizona v. Mauro, 481 U.S. 520, 107 S.Ct. 1931, 95 L.Ed.2d 458 (1987); Lowe v. State, 650 So.2d 969 (Fla.1994). In Arizona v. Mauro, the United States Supreme Court addressed a similar situation after Mauro invoked his right to remain silent following the death of his child. Mauro’s wife — also a suspect in the child’s death and in custody — was being questioned in another room of the police station and demanded to speak with her husband. She was allowed to do so in the presence of a police officer. Mauro’s statements during that conversation were utilized at trial to refute his claim of insanity. Relying on Rhode Island v. Innis, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), the Arizona Supreme Court held that allowing Mauro to speak with his wife in the presence of a police officer constituted an interrogation within the meaning of Miranda. Reversing the Arizona Supreme Court, the Supreme Court held the purpose underlying Miranda — to prevent government officials from using the coercive nature of confinement to extract confessions — was not implicated under those circumstances. 481 U.S. at 530, 107 S.Ct. 1931. Accordingly, the Court concluded Mauro was not subjected to interrogation or its functional equivalent within the meaning of Miranda. Id.
In Lowe v. State, officers investigating a homicide proceeded to a police station where Lowe and his girlfriend had gone to discuss an unrelated matter. The two were separated, although the girlfriend could hear the substance of the questions directed at Lowe. Lowe denied involvement and then invoked his right to remain silent. Lowe’s girlfriend asked to speak to Lowe and agreed to have the conversation *252 recorded. That conversation was not prompted by the police. Reviewing the admissibility of the incriminating statement that followed, the Florida Supreme Court agreed with the trial court that the conversation with the girlfriend did not constitute an interrogation under Mauro because the police did not employ the girlfriend as an agent to coerce a confession from Lowe. 650 So.2d at 974.
Like the girlfriend in Lowe, Thomas was not an agent of the police. She was not instructed on what to say or do, or prompted in any fashion to elicit a confession or admission from Riley. Her presence at the station was initiated by Riley’s request to keep her informed as to what was going on, albeit, no doubt, law enforcement hoped to gather evidence as a result of the meeting. Neither Thomas nor Riley had requested or been led to believe their conversation would be kept private.
Riley relies on Cox v. State, 26 So.3d 666 (Fla. 4th DCA 2010), in support of his argument that the conversation with Thomas was violative of both the earlier invocation of his right to remain silent and his reasonable expectation of privacy. Generally, voluntary jailhouse conversations are not entitled to a reasonable expectation of privacy. See Allen v. State, 636 So.2d 494, 496 (Fla.1994). However, as recognized in Allen and found in Cox, such an expectation of privacy may be reasonable “when law enforcement deliberately fosters an expectation of privacy, especially for the purpose of circumventing a defendant’s right to counsel.... ” Cox, 26 So.3d at 676; see also State v. Calhoun, 479 So.2d 241, 244-45 (Fla. 4th DCA 1985).
In the instant case, it appears there was no attempt by law enforcement to foster an expectation of privacy. No law enforcement officer suggested the meeting would be private, nor did the conduct of Riley and Thomas reflect an expectation of privacy. The remaining issue raised on appeal is without merit. Accordingly, we affirm.
AFFIRMED.
PALMER and LAWSON, JJ., concur.

. The evidence adduced at trial indicated that Riley's codefendant shot Mills several times after Mills threatened to call the police. Riley then stood over Mills and shot him once more.

. A different circuit judge handled this motion.