STONE, C.J.
We affirm Boyer’s conviction on the charge of attempted robbery with a deadly weapon while wearing a mask. We write to address one issue, the denial of Boyer’s pre-trial motion to suppress a tape of his conversation with his sister-in-law in an interrogation room at the police station.
The evidence presented on the motion to suppress shows that Boyer was initially arrested on unrelated charges and read his Miranda rights, which he indicated he understood and did not wish to waive at that time. Subsequently, in an interrogation room at the police station, detectives engaged in conversation with Boyer, explaining the arrest and the inventory of items seized. Detective Hostetler reminded Boyer that he told the deputy at the scene of the arrest that he did not wish to make a statement at that time, to which Boyer responded “Uh-huh.” Hostetler then asked Boyer if, after seeing all the information Hostetler had given him, he had anything else he wanted to talk about. Boyer responded, “What’s the whole deal here?” In response, the detectives told Boyer that another individual had confessed to an attempted robbery and had implicated Boyer.
At the end of the discussion, Hostetler told Boyer that his sister-in-law, Ann Boyer, whom the defendant had previously telephoned, was- at the station house. When the defendant indicated that he wished to speak to her, Hostetler responded, “Okay, because I need to wrap up my stuff and get out of here and I figured that while she’s here, I’ll let you talk to her ... I’m going to get out of here in a few minutes and let,you talk to her a few minutes.” The subsequent conversation with Ann Boyer was recorded.
At the suppression hearing, Detective Hostetler testified that he monitored the conversation and observed the defendant and his sister-in-law lower their voices, move away from the wall where the microphone was located, move to the edge of the • table and get closer, “face-to-face.” During the conversation, the defendant intentionally tapped on the microphone on several occasions.
The taped conversation yielded only one arguably incriminating statement, which has been variously interpreted as
He got busted doing something else ... And he told right? ... And I’m not gonna push it what he did, but he did do it ... Or attempted to do it, right?
[[Image here]]
I’m not going to bullshit you, but he did do it ... or attempted to do it, right?
[[Image here]]
I’m not going to bullshit you, we did it, right, or attempted to do it, right?
Ann Boyer testified that before she spoke to the defendant, the detectives asked her to try to get him to cooperate with them. In the course of their conversation, she told Boyer of this request. While Hostetler did not make the request, he acknowledged the possibility that another police officer may have done so.
The trial judge denied Boyer’s motion to suppress, finding that Boyer, having been advised of his Miranda rights, initially invoked his right to remain silent but later *66 voluntarily began to discuss the offense with the police detectives. The court also found that Boyer had no reasonable expectation of privacy. Further, his apparent awareness of the presence of microphones in the room and of the possibility that the conversation was under surveillance belied his asserted expectation of privacy.
We initially note that voluntary jailhouse conversations are not normally accorded the same privacy as other communications. See Allen v. State, 636 So.2d 494 (Fla.1994). The test for measurement of the Fourth Amendment right of privacy requires a determination of whether the individual had a subjective expectation of privacy and whether society recognizes that expectation as reasonable. See State v. Smith, 641 So.2d 849 (Fla.1994)(citing Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)(Harlan, J., concurring)); see also Springle v. State, 613 So.2d 65 (Fla. 4th DCA 1993).
Patently, here, Boyer had no subjective expectation of privacy and the record of the conduct of Boyer and his sister-in-law during the conversation supports the trial court’s finding to that effect. “A trial court’s ruling on a motion to suppress comes to the appellate court clothed with a presumption of correctness and the court must interpret the evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustaining the trial court’s ruling.” Rolling v. State, 695 So.2d 278, 291 (Fla.1997); see also Moskowitz v. State, 710 So.2d 584 (Fla. 4th DCA 1998).
Turning to the second prong of the test and relying on Allen, we find ample record support for the finding of lack of reasonable expectation of privacy in this case, where Boyer neither asked for privacy, nor was it offered, and the police said and did nothing that would reasonably foster a sense of privacy in the conversation. See also Johnson v. State, 730 So.2d 368, 24 Fla. L. Weekly D817 (Fla. 5th DCA 1999).
We distinguish State v. Calhoun, 479 So.2d 241 (Fla. 4th DCA 1985), which held a surreptitiously taped jailhouse conversation inadmissible. In Calhoun, the defendant was brought from his jail cell for an interview. He responded to the recitation of Miranda warnings by telling the police that he wanted to talk privately with his brother, also in custody, before making a statement. The two were then placed in a room for a private conversation, which was monitored. An officer subsequently reentered the room, before beginning the secret videotaping that was the subject of the motion to suppress, and again read the defendant his rights, at which time the defendant clearly invoked his right to remain silent and asked to see his public defender. The interview was immediately terminated, but after leaving the defendant alone for a few minutes, the officers, as a matter of strategy, again placed the brother in the room and taped their conversation. In affirming the trial court’s suppression of the evidence based on the totality of the circumstances, this court distinguished those cases recognizing the validity of surreptitious tape recording of conversations by the police. We reasoned that by re-introducing the brother into the room after the defendant had clearly invoked both his right to remain silent and his right to speak with his attorney, the state was improperly inducing the defendant to make a statement that the state could not legally obtain directly. Id. at 243 — 45.
In this case, as in Allen, the surreptitious taping of the conversation was not employed to circumvent the exercise of Boyer’s right to remain silent, which he had voluntarily relinquished during the conversation with the detectives at the police station. When a subject invokes his or her right to remain silent, the police must cease interrogation; however, questioning may be resumed after the passage of a significant period of time upon reminding the subject of those rights. See Wells v. State, 540 So.2d 250 (Fla. 4th DCA 1989); *67 McNickles v. State, 505 So.2d 633 (Fla. 4th DCA 1987).
Here, the trial court correctly concluded that Boyer voluntarily relinquished his right to remain silent when Detective Hostetler reminded him of his prior exercise of his right and advised Boyer the incriminating evidence gathered against him, whereupon Boyer began questioning the detective. A trial court’s ruling on voluntariness is presumed correct on appeal and will not be overturned unless clearly erroneous. See Bonifay v. State, 626 So.2d 1310 (Fla.1993); cf. Burns v. State, 584 So.2d 1073, 1076 (Fla. 4th DCA 1991)(“issue of voluntariness is ultimately a legal question to be determined under federal constitutional standards,” but deference must be given to factual findings of trial judge who observed witnesses first-hand)(citing Arizona v. Fulminante, 499 U.S. 279, 286, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)). As Boyer had not invoked his Sixth Amendment right to counsel, we deem inapposite those cases requiring any conversation to be initiated by the suspect. See, e.g. Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); Sapp v. State, 690 So.2d 581, 584 (Fla.1997).
Even if Boyer had not voluntarily relinquished his right to remain silent, that fact alone need not lead us to conclude he had a reasonable expectation of privacy. In Larzelere v. State, 676 So.2d 394 (Fla.1996), the defendant had invoked her right to remain silent and right to counsel; nonetheless, the supreme court held that police recording of her jailhouse conversation with her son was not improper because the police had not fostered a reasonable expectation of privacy. See also State v. McAdams, 559 So.2d 601 (Fla. 5th DCA 1990)(appellees had no expectation of privacy in conversation held in backseat of police cruiser despite exercise of right to remain silent). Only in the specific circumstances of Calhoun, where the police officer’s conduct impermissibly circumvented the arrestee’s exercise of his rights, did the absence of a waiver of Miranda rights lead to a contrary result.
Finally, we reject Boyer’s argument that the request to Ann Boyer to try to obtain defendant’s cooperation was a subterfuge which rendered the conversation inadmissible and distinguish State v. Nash, 718 So.2d 269 (Fla. 5th DCA 1998), because, here, Ms. Boyer was not asked to find out what happened but merely to try to get the defendant to cooperate. Furthermore, she told Boyer that she had been asked to do this; therefore, his argument that he was tricked into a confession is unpersuasive.
This case meets the two prong test enunciated in Smith, as Boyer clearly had no subjective expectation of privacy; nor would the law afford him, as an arrestee, an expectation of privacy as to conversations in the jailhouse where the police had done nothing improper to induce such an expectation. See Allen; Johnson.
Therefore, we find no error or abuse of discretion in the denial of Boyer’s motion to suppress and affirm as to all issues raised on appeal.
GUNTHER and FARMER, JJ., concur.