WARNER, J.
The defendant appeals the denial of his motion for postconviction relief from his convictions and sentences for attempted sexual battery and lewd or lascivious molestation. We affirm and write to address two issues. Defendant alleged that his trial counsel was ineffective for failing to move to suppress the videotape of defendant’s conversation at the police station with his girlfriend. Based upon the totality of circumstances in this case, we conclude that defendant has not shown that the police violated a reasonable expectation of privacy in recording his conversations. Second, defendant alleged that counsel was ineffective in failing to object to testimony which was tantamount to victim bolstering. Although the court found that the evidence was part of counsel’s trial strategy, we also conclude that the introduction of the evidence did not create Strickland prejudice. We affirm as to all issues raised.
Defendant Robert Lundberg was convicted of attempted sexual battery on a child under the age of twelve by a perpetrator eighteen years of age or older, and lewd or lascivious molestation on a child under the age of twelve by an offender eighteen years of age or older. These charges were based on testimony that defendant molested his minor niece on one occasion by penetrating her vagina with his finger and on another occasion by touching her vagina. He was sentenced to thirty years in prison for the first count and a consecutive term of fifteen years in prison for the second. He appealed, arguing trial court erred in the denial of his motion to suppress statements he made to his girlfriend in a police interview room. We affirmed in Lundberg v. State, 918 So.2d 444 (Fla. 4th DCA 2006), rev. denied, 932 So.2d 193 (Fla.2006). Although the trial court had suppressed statements defendant had made to the police because of coercion, we rejected his argument that the statements to his girlfriend were obtained through an exploitation of the initial coercion and were “fruit of the poisonous tree.” Wong Sun v. United States, 371 U.S. 471, 487-88, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). While he also made a claim on appeal that the statement should be suppressed because the police induced him into a reasonable expectation of privacy, we found that the issue had not been properly preserved for appellate review. Lundberg, 918 So.2d at 445.
*564 Defendant filed a motion for postconviction relief raising twenty-three claims of ineffective assistance of counsel. In one claim, he maintained that counsel erred in not moving to suppress his statements to his girlfriend on the grounds that the police created a false belief that his conversation would be private. Defendant had voluntarily appeared for questioning when the child’s parents reported the incidents with their daughter. The detective interviewing the defendant read him his rights even though she told him he was not in custody. He agreed to speak to her without an attorney. Through the course of the interview he admitted at least one of the events, but he claimed that the touching was accidental when he was carrying the child to bed. Defendant then asked to see his girlfriend who was at the station. The detective agreed and turned off the tape recorder on the interview room table. She told him that she would not tell the girlfriend anything but that it was up to him what to tell her. Then the detective brought the girlfriend into the interview room and as she left said, “I’m going to give you all privacy.” Defendant then told his girlfriend what had just transpired and that he thought that he might have touched the little girl when he was drunk. Essentially, what he told his girlfriend coincided with what he told the detective. This conversation was recorded on the video camera in the interview room.
In his postconviction motion, defendant claimed that because the detective had told him that he was giving him “privacy,” counsel should have moved to suppress the conversation based upon a violation of privacy and that counsel’s failure to do so constituted ineffective assistance.
The state responded to this claim by arguing that no defendant has any expectation of privacy in the interview room of a police station. The trial court summarily denied the claim, agreeing with the state. It ordered an evidentiary hearing on other claims. During the evidentiary hearing, however, the issue of the failure to suppress the statement to the girlfriend was addressed. Defense counsel testified that he did not move to suppress the conversation because there was no expectation of privacy in the interrogation room. The trial court did not readdress the issue in its ruling following the evidentiary hearing.
Ineffective assistance of counsel requires the defendant to prove two requirements:
First, the defendant must show that counsel’s performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the “counsel” guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel’s errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The first prong is established by showing that “counsel’s representation fell below an objective standard of reasonableness” under “prevailing professional norms.” Id. at 688, 104 S.Ct. at 2064-65. The second prong is established by showing that “there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.” Id. at 694, 104 S.Ct. at 2068.
The question presented in this case is whether counsel was ineffective for failing to move to suppress the recorded conversation between the defendant and his girlfriend as violating the Fourth Amend *565 ment, because of an invasion of the defendant’s reasonable expectation of privacy. In Williams v. State, 982 So.2d 1190, 1194 (Fla. 4th DCA 2008), we set forth the test to be applied:
A citizen’s right to privacy under the Fourth Amendment of the Constitution of the United States is determined by a two prong test: 1) whether the citizen had a subjective expectation of privacy; and 2) whether that expectation was one that society recognizes as reasonable. State v. Smith, 641 So.2d 849, 851 (Fla.1994) (citing Katz v. United States, 389 U.S. 347, 360, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring)). Under this test, a prisoner does not have a right to privacy because areas of confinement do not share the same attributes as a private car, home, office, or hotel room. Id.
In the present case the trial court summarily denied this claim of ineffective assistance, because it concluded that no reasonable expectation of privacy had been violated. Defendant was well aware of his previous conversation in the interview room having been recorded. Therefore, he had no reasonable expectation of privacy. The trial court concluded that the surreptitious taping of the conversation in this case was not employed to circumvent the exercise of the defendant’s right to remain silent, as he had already relinquished that right when interviewed with the detective.
The court cited Boyer v. State, 736 So.2d 64 (Fla. 4th DCA 1999), in which this court held that a defendant had no subjective expectation of privacy in conversations occurring at the jailhouse. There, the defendant had voluntarily relinquished his right to remain silent by speaking with the detectives at the police station, but he did not confess to the crimes. After his interview, he requested to speak to his sister-in-law. The officer allowed the sister-in-law to come in, saying that he would get out of the room so that the defendant could talk to her. The subsequent conversation with the sister-in-law was recorded, and the defendant made incriminating statements to her. In upholding the denial of the motion to suppress, our court found that the defendant had no subjective expectation of privacy nor reasonable expectation of privacy, because the defendant did not ask for privacy and the police did nothing to foster a sense of privacy in the conversation. Id. at 67.
Defendant relies primarily on State v. Calhoun, 479 So.2d 241 (Fla. 4th DCA 1985), to establish that counsel’s failure to move to suppress the recorded conversation with his girlfriend on grounds of police creating a false sense of privacy in the conversation was ineffective assistance. In Calhoun, we suppressed a videotaped jailhouse conversation between an inmate and his brother. The facts, however, are markedly different than the facts of this case. Calhoun, the defendant, was in jail on unrelated charges when officers sought to question him about another charge. He was taken to an interview room equipped with a concealed video camera. Although the officers read him his Miranda rights, they did not inform him that he was a suspect in the new case. The defendant did not waive his rights but asked to speak to his brother. The brother was brought into the interview room for a private conversation with the defendant, which the officers were able to monitor through the video hookup. Neither brother was aware that the officers could hear their conversation. After about five minutes, the lead detective terminated the brothers’ conversation and again informed the defendant of his Miranda rights. The defendant invoked his right to remain silent and asked to see the public defender. The detective *566 then terminated the interview, but he left the defendant in the room. The detective allowed his brother to re-enter the room so that his conversation with his brother could now be monitored for “investigative” purposes. Neither brother consented to the monitoring or taping of their conversation. During the conversation, the defendant made several incriminating statements.
The trial court granted a motion to suppress the statements. Our court upheld the court’s ruling. While acknowledging that a defendant would normally have no reasonable expectation of privacy in the interview room, the defendant’s expectation of privacy was deliberately fostered by the officers after the defendant had invoked both his right to remain silent and right to counsel. “To rule that under these circumstances the defendant’s statements to his brother are admissible is to make a mockery of the Miranda rights.” Id. at 243.
For further support, defendant cites to Allen v. State, 636 So.2d 494 (Fla.1994). In Allen, the supreme court refused to suppress recordings of statements made by Allen to his co-defendant in a murder case when they were both placed in the holding cell at the jail. Prior to that, detectives had interviewed Allen about the murder after reading him his Miranda rights, but he did not confess. In conversing with the co-defendant in the cell, Allen made incriminating statements. Because voluntary jailhouse conversations were not entitled to a reasonable expectation of privacy, the court refused to suppress the statements, noting that there was no improper police involvement. Acknowledging Calhoun, the court said that “police impropriety would exist if police deliberately fostered an expectation of privacy in the inmates’ conversation, ... especially where the obvious purpose was to circumvent a defendant’s assertion of the right to remain silent.” Id. at 497 (internal citation omitted). See also Larzelere v. State, 676 So.2d 394 (Fla.1996) (suppression of conversation between co-defendants, mother (the appellant) and son, not required even though the mother had invoked right of silence, where the mother had not requested to speak to son in private and they were merely placed in holding cell together before a hearing where conversation was recorded).
The deliberate fostering of an expectation of privacy led our court to reverse an order denying suppression of a taped conversation between a defendant and his co-defendant in Cox v. State, 26 So.3d 666 (Fla. 4th DCA 2010). There, the defendant had invoked his Miranda rights and refused to discuss the crime for fear that his statements would be recorded. The detective then offered the co-defendant leniency in sentencing if the co-defendant could elicit incriminating statements from the defendant. The investigating detective brought the co-defendant into the room and first interviewed both the defendant and the co-defendant together. When the co-defendant implicated the defendant, the detective exited the room and left the two defendants alone. Having earlier been assured that the room was not wired, the defendant began a conversation with the co-defendant in which he made incriminating statements. Because the defendant had invoked his Miranda rights, and because the detective had assured him that his conversations were not being recorded, the detective orchestrated a situation in which his actions created a reasonable expectation of privacy in the room. The detective’s conduct was specifically designed to circumvent the defendant’s assertion of his Miranda rights.
In Calhoun, Allen, Larzelere, and Cox, the defendants had all invoked their rights *567 of silence. Despite the invocation of those rights, the detectives in Calhoun and Cox deliberately fostered an expectation of privacy in the conversation in order to overcome each defendant’s assertion of his constitutional right of silence. On the other hand, even though rights were invoked in Allen and Larzelere, statements in the jailhouse were not suppressed where the police did not record them as part of a deliberate attempt to circumvent the defendants’ assertions of the right of silence. A determinative factor, therefore, appears to be whether the conduct of the detectives deliberately creates a false sense of privacy for the purpose of overcoming the assertion of constitutional rights in order to obtain incriminating statements from the defendant.
In this case the defendant waived his Miranda rights and made admissions to the detective. The defendant then asked to speak to his girlfriend. The detective handcuffed the defendant and went through his wallet, for security purposes. Before she brought the girlfriend in, she told the defendant that she was ending the tape recording. He asked what he would be charged with, and the officer told him that the charges would be two sexual batteries. She would not directly answer his question of whether he would have to do “time” for the crimes. She told him that she would not tell the girlfriend anything and that it was up to him what he would tell his girlfriend. She then brought the girlfriend in and left the room saying the she would give them privacy. The defendant told his girlfriend that he was going to jail for sexual battery. He then apologized to her and related essentially the same information that he told the detective, as well as what the detective had told him about the two incidents. In addition, however, he admitted to her that he might have touched the victim when he was drunk, an admission he did not make to the detective.
Although the detective used the word “privacy” when leaving the room, we find this hard to distinguish from Boyer where the officer told the defendant that he would get out of the room so the defendant could talk to his sister-in-law. That, too, could foster a notion in a defendant that people would not be listening to his conversation. Yet, in Boyer we held that the statement should not be suppressed. Here, the defendant had already made admissions to the detective and had specifically asked to see his girlfriend. He had not asked for privacy, even though the officer did vacate the room. And all he apparently wanted to do was to tell his girlfriend how sorry he was for the situation and explain what he had told the detective. The officer’s statement that she wanted to give them privacy more likely conveyed to the defendant that he could tell his girlfriend about his arrest out of the public eye — to save embarrassment to them both. This conduct is not the type of deliberate fostering of an expectation of privacy in order to avoid the defendant’s assertion of his constitutional rights which led the trial court to suppress the recorded conversation in Calhoun and Cox.
The defendant asks us to follow State v. Munn, 56 S.W.3d 486 (Tenn.2001), which held that a juvenile murder suspect had a subjective expectation of privacy which the court recognized as reasonable when detectives asked the juvenile if he wanted to talk alone with his mother, then left the room and closed the door, after having turned off the tape recorder at the juvenile’s request even though another hidden camera picked up the conversation. However, in that case not only had the juvenile not been read his Miranda rights, but he had not incriminated himself in his earlier statements to the detectives. The court *568 found that the detectives had deceived both the juvenile and the parents that their conversations were private. In this case, however, the defendant had already confessed and had not been assured that his conversations were private. Munn is thus distinguishable from this case.
While we acknowledge that this is a close case factually, and each case turns on its specific facts, for that very reason we cannot conclude that counsel made a serious error such that he was not functioning as counsel within the Sixth Amendment. As he stated at the evidentiary hearing, “I think it’s well founded in the case law that you don’t have a reasonable expectation of privacy under those conditions.... You’re in an interrogation room, you’re in handcuffs .... ” Counsel did try to get the statements suppressed under Wong Sun, but both the trial court and this court rejected that approach. And while this issue was at least arguable, meaning that he could have filed a motion to suppress in good faith and made an argument based upon Calhoun, that does not mean that he was ineffective under the Strickland standard for failing to do so. We thus affirm the trial court’s denial of postconviction relief on this ground.
The court held a hearing on several of the claims of ineffectiveness. In particular, defendant alleged that counsel was ineffective in failing to object to repeated bolstering of the child victim’s credibility by various witnesses. The victim was allowed to testify that both of her parents repeatedly asked her if her allegations of abuse were true, and she told them they were. Likewise, her aunt, to whom she first reported the abuse, as well as both her parents, each testified that they asked the victim if she was telling the truth, and she swore that she was. Her father even testified that he took her to a counselor who said that “without a doubt” her story was true. The detective also testified that the victim was not deceptive when questioned.
At the hearing, defense counsel testified that, given the fact that the state would produce defendant’s incriminating statement to his girlfriend, he had to formulate a strategy to discredit the victim’s testimony. He intended to do this by showing where there were differences in her various statements that she made both to law enforcement and to her family. Part of that strategy was to show that her own family was not sure she was telling the truth — that the contacts may have been unintentional or fabricated. It also required showing that there may have been some manipulation of the victim by both family and law enforcement. In particular, the defendant and the aunt had a very acrimonious relationship. Counsel attempted to show that the aunt had a motive to manipulate the victim’s testimony. Revealing to the jury all the efforts the parents made to determine that the victim was telling the truth, could permit the jury to conclude that reasonable doubt would exist if the parents had a hard time believing their own child. Additionally, the victim told the detective she was penetrated, yet other witnesses testified that the victim did not say she was penetrated. Therefore, allowing the detective to testify that she believed the victim was telling the truth as to the statement she. made to the detective could also discredit the victim’s testimony, when it was apparent that there were various versions of the “truth.”
In its order the trial court found that counsel’s trial strategy of showing that the victim’s own family did not initially believe her allegations was a reasonable trial strategy. “The issue as to [the victim’s] veracity or capacity for truthfulness was essentially two sides of the same coin: the family questioning her truthfulness versus *569 bolstering the victim’s statements and testimony.” Although it found that the evidence could have cut both ways, either for or against the defendant, that the defendant was not convicted of sexual battery but of attempted sexual battery showed that counsel’s tactics could have partially succeeded, because the victim testified that defendant’s fingers penetrated her vagina. Based upon the court’s review of the totality of the evidence, it was convinced that the decisions did not constitute ineffective assistance.
Strickland establishes a strong presumption that counsel’s strategic choices are reasonable:
Judicial scrutiny of counsel’s performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel’s assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel’s defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.... A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel’s challenged conduct, and to evaluate the conduct from counsel’s perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action “might be considered sound trial strategy.”
466 U.S. at 689, 104 S.Ct. 2052 (citations omitted). In addition, review of this issue involves a mixed question of law and fact. The trial court made the factual finding that counsel had made a tactical, strategic decision to allow some of the questioning in order to build a case to discredit the victim. This was supported by counsel’s testimony. Based upon our own review of the trial transcript, and giving the deference required under Strickland, we cannot conclude that the strategy was completely unreasonable.
Moreover, having reviewed the trial transcript, we cannot say that had all of the evidence bolstering the victim’s credibility been excluded, the result would have been any different or that the jury would have had a reasonable doubt respecting guilt, thus failing the second prong of Strickland.
To establish the second prong under Strickland, the defendant must show that “there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.” [466 U.S.] at 694, 104 S.Ct. 2052, 80 L.Ed.2d 674. When reviewing a trial court’s ruling after an evidentiary hearing on an ineffective assistance claim, this Court gives deference to the trial court’s factual findings to the extent they are supported by competent, substantial evidence, but reviews de novo the trial court’s determinations of deficiency and prejudice, which are mixed questions of fact and law. See Arbelaez v. State, 898 So.2d 25, 32 (Fla.2005).
Morris v. State, 931 So.2d 821, 828 (Fla.2006).
In this case, the victim’s testimony was clear and precise. She was able to recount the events with complete detail and firmly rejected the defendant’s version of the events. The defendant admitted to his girlfriend in the taped conversation that he might have touched the child when he was drunk. Even when he testified, his expía- *570 nation was that he might have accidentally touched her, although his version of the incidents was markedly different than the child’s version. In his testimony, he was much less certain with respect to his description. He also admitted that he might have accidentally touched the victim as he was carrying her to bed. His attempt to explain away his statements to his girlfriend at the jail were weak and ineffective. Further, many of the victim’s statements to her parents and relatives likely were admissible as a child hearsay statement. See § 90.803(23), Fla. Stat. Thus, not all of the evidence presented by the parents and relatives was inadmissible. We cannot say that the bolstering of the victim’s testimony caused Strickland prejudice.
We find no error in the denial of the remaining multiple claims raised by the defendant in his postconviction motion.
For the foregoing reasons, we affirm the trial court’s orders denying defendant’s motion for postconviction relief.
STEVENSON and CIKLIN, JJ., concur.