[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-15793
_____

D.C. Docket No. 2:14-cv-14347-RLR

ROBERT T. LUNDBERG,

Petitioner - Appellant,

versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

Respondents - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(March 31, 2020)

Before JORDAN, JILL PRYOR, and WALKER,[*] Circuit Judges.

PER CURIAM:

Robert T. Lundberg, a Florida prisoner, is serving a total 45-year sentence after a jury found him guilty of attempted sexual battery on a child under 12 by a perpetrator 18 or older, in violation of Fla. Stat. § 794.011(2), and lewd or lascivious molestation of a child under the age of 12 by a perpetrator 18 or older, in violation of Fla. Stat. § 800.04(5)(b).  After the district court denied his petition for a writ of habeas corpus, *see* 28 U.S.C. § 2254, Mr. Lundberg filed a notice of appeal and obtained a certificate of appealability on a number of claims.  Following review of the extensive record in this case, and with the benefit of oral argument, we affirm the district court's denial of habeas relief.

## I

To place Mr. Lundberg's claims in context, we begin with the facts and procedural history.

## A

When V.C. was nine years old, she told her paternal aunt, Lillian Cassaude, that Mr. Lundberg had touched her inappropriately on two occasions.  Ms. Cassaude then told V.C.'s parents, and they reported these allegations to the Port St. Lucie

---

[*] The Honorable John M. Walker Jr., United States Circuit Judge for the Second Circuit, sitting by designation.

Police Department, which began a criminal investigation. At the time of V.C.'s allegations, Mr. Lundberg was in a romantic relationship with Xiomara Figueroa, V.C.'s maternal aunt. Mr. Lundberg and Ms. Figueroa had previously been married and were dating again after their divorce.

Detective Teressa Dennis, who was in charge of the investigation, interviewed V.C. in March of 2002. V.C. told her of two different incidents where Mr. Lundberg touched her inappropriately: in one incident, Mr. Lundberg touched her vagina; in the other, Mr. Lundberg penetrated her vagina with his fingers.

On May 2, 2002, Mr. Lundberg voluntarily went to the police station to speak to Detective Dennis regarding V.C.'s allegations. Detective Dennis placed Mr. Lundberg in an interview room, which had a visible tape recorder on the table. After Detective Dennis started recording the interview on the tape recorder, she advised Mr. Lundberg that he was not under arrest. But "because of the nature of the allegations," she read him his *Miranda* rights, *see Miranda v. Arizona*, 384 U.S. 436 (1966), and had him sign a form acknowledging that he understood his rights. Mr. Lundberg said that he was willing to answer questions and understood that the interview was being recorded.

During the interview, Mr. Lundberg told Detective Dennis that he was aware that V.C. had told Ms. Cassaude that he had "touched her in a sexual manner." Mr. Lundberg also volunteered to Detective Dennis that he and Ms. Cassaude did not get

3

along very well, and implied that she could have told V.C. to make up the allegations against him.

As an interrogation tactic, Detective Dennis lied to Mr. Lundberg by embellishing V.C.'s allegations—mainly, she told him that V.C. alleged that he had tried to have sex with her.  Mr. Lundberg denied trying to have sex with V.C. and explained to Detective Dennis that the only time when he could have touched V.C. was on a night when he was babysitting V.C., his nephew, and his son.  He remembered that V.C. had fallen asleep on the couch, and while he was carrying her to the bed, he tripped over his sleeping son and fell with V.C. on top of the bed.  At that time, V.C. woke up and said "ow," but when he asked her if she was okay, she answered "yes."  Mr. Lundberg denied touching V.C. any other time before or after that incident.

Detective Dennis told Mr. Lundberg that sometimes children "blow things out of proportion," and that there was a big difference in the crime of having "full-blown sex and penetration . . . as opposed to a touch."  Then, Detective Dennis implied that Mr. Lundberg would get probation for just a rub or a tap, but that more severe conduct could result in a capital sexual battery charge with the possibility of life in prison or the death penalty.  After hearing this, Mr. Lundberg told Detective Dennis that on another night, he remembered drinking and carrying V.C. to her bed and that

4

he "might have touched her."  Mr. Lundberg also said, "I remember touching her," and that he "put [his] hands down her panties and rubbed her vagina."

After his confession, Detective Dennis informed Mr. Lundberg that she was arresting him for sexual battery on a minor.  Mr. Lundberg asked if he could speak with his girlfriend, Ms. Figueroa, who was at the police station.  Detective Dennis handcuffed Mr. Lundberg and told him that she would bring Ms. Figueroa to the interview room.  Before bringing Ms. Figueroa, Detective Dennis told Mr. Lundberg that she would turn off the tape recorder on the table.  When Ms. Figueroa entered the interview room, Detective Dennis exited the room while saying, "I'm going to give you all privacy."

Unbeknownst to Mr. Lundberg, the interview room was equipped with a hidden video camera that recorded his exchange with Ms. Figueroa.  After Detective Dennis left the room, the camera captured Mr. Lundberg telling Ms. Figueroa that he was going to jail for sexual battery.  When Ms. Figueroa asked, "did you do it?" Mr. Lundberg replied, "I kind of remember touching her."  He told Ms. Figueroa that "when I drink I do stupid stuff, man, you know, sexual stuff, and I don't know why I do it."

**B**

Florida charged Mr. Lundberg with sexual battery, or attempted sexual battery on a child under 12 by a perpetrator 18 or older, in violation of Fla. Stat. § 794.011(2)

5

(Count 1), and lewd or lascivious molestation of a child under the age of 12 by a perpetrator 18 or older, in violation of Fla. Stat. § 800.04(5)(b) (Count 2). Mr. Lundberg's counsel moved to suppress Mr. Lundberg's statements to Detective Dennis after she threatened him with the death penalty because such a threat rendered his confession involuntary.

The trial court held a hearing on the motion to suppress. Detective Dennis and Mr. Lundberg testified at the hearing, and the state played the video recording containing the interview and Mr. Lundberg's conversation with Ms. Figueroa. The trial court noted that immediately following Detective Dennis' mention of the death penalty and life imprisonment, Mr. Lundberg displayed a marked change in demeanor, and shortly thereafter, he confessed. The trial court determined that Detective Dennis' actions rendered Mr. Lundberg's inculpatory statements involuntary and suppressed any statements made after the death penalty reference.

Mr. Lundberg's counsel moved for clarification on the suppression order to delineate its scope. Counsel asserted that the statements to Ms. Figueroa were unreliable because they were made after Detective Dennis coerced Mr. Lundberg into confessing. The state argued in response that Mr. Lundberg's statements to Ms. Figueroa should not be suppressed because he voluntarily made those statements, and no police officer was present. The trial court clarified that Mr. Lundberg's

6

videotaped statements to Ms. Figueroa were admissible because Mr. Lundberg did not make them to a police officer.  Mr. Lundberg's case proceeded to trial.

## C

The state called V.C. as its first witness, and she identified Mr. Lundberg in the courtroom.  She testified that one night she woke up to Mr. Lundberg tapping on her vagina with his finger.  Another time, she woke up to find that he had put his hand inside her pajama bottoms and underwear and inserted his finger into her vagina.  He stopped when she woke up.

Lillian Cassaude, V.C.'s paternal aunt, testified that V.C. told her that Mr. Lundberg had touched her.  According to Ms. Cassaude, she wanted to make sure that the incidents had actually occurred, so she asked V.C., "are you sure?" and "are you sure you're not lying?"  Ms. Cassaude acknowledged that she and Mr. Lundberg did not have a good relationship.  On redirect, Ms. Cassaude denied telling V.C. that she should say that Mr. Lundberg molested her because of her own dislike for him.

V.C.'s father testified that he had known Mr. Lundberg for over 15 years.  After Ms. Cassaude told him of V.C.'s accusations, he repeatedly asked V.C. if she was sure "that it happened" because he "had a problem believing her."  He told V.C. that Mr. Lundberg could "get in serious trouble if [she was] lying," but she maintained that she was not lying, and that the incidents did occur.  Because he and his wife "wanted to be totally sure" that the incidents occurred, they took V.C. to a

7

counselor named Larry Arbach. V.C.'s father testified that Mr. Arbach said he believed her "without a doubt." Mr. Lundberg's counsel did not object to this line of questioning.

V.C.'s mother testified that when she found out what V.C. had told Ms. Cassaude, she contacted Mr. Arbach. Mr. Lundberg's counsel made a hearsay objection, which the trial court sustained.

Detective Dennis testified that she interviewed V.C. and that her story remained consistent. On redirect, Detective Dennis said that she could tell when children would blow cases out of proportion and that it was "very obvious" when that happened. She added that V.C. was able to "clearly" articulate what Mr. Lundberg did.

The state then played the recording of Detective Dennis' interview with Mr. Lundberg, and the video recording containing the conversation between Mr. Lundberg and Ms. Figueroa. Consistent with the trial court's suppression order, the state excised the portion of the interview where Detective Dennis mentioned the death penalty and Mr. Lundberg subsequently confessed.

Mr. Lundberg then presented his case. Taking the stand, he testified and denied that he touched or placed his finger in V.C.'s vagina. He told the jury that on one occasion, he was carrying V.C. to her bed when he tripped and dropped her, and that he could have inadvertently touched or punched her in the groin. Mr.

8

Lundberg also testified that he did not recall sexually touching V.C.  Mr. Lundberg said that he admitted to his girlfriend that he might have touched V.C. because he had just had a long interview with Detective Dennis, had been awake for hours, and his "brain was fried."  He explained that when he told his girlfriend that he "kinda remember[ed] touching" V.C., he did not mean that he touched her in a sexual way.

After closing arguments, the trial court instructed the jury that Mr. Lundberg was accused of sexual battery, but that in reviewing the evidence, if it did not conclude that he committed that crime, it could consider the lesser-included crime of attempted sexual battery.  The trial court also read to the jury the elements of both sexual battery and attempted sexual battery.  Mr. Lundberg's counsel did not object to the jury instructions.

Following deliberations, the jury found Mr. Lundberg guilty of attempted sexual battery.  The jury also found Mr. Lundberg guilty of lewd or lascivious molestation of a child under the age of 12 by a perpetrator 18 or older.  The trial court sentenced Mr. Lundberg to 30 years' imprisonment on Count 1, and 15 years' imprisonment on Count 2, to be served consecutively.

**D**

Mr. Lundberg, through counsel, appealed his convictions to Florida's Fourth District Court of Appeal.  Mr. Lundberg argued that the trial court erred in refusing to suppress his statements to Ms. Figueroa in the interview room because the

statements were part of the involuntary confession to Detective Dennis and were "fruit of the poisonous tree."

The Fourth District ruled that Mr. Lundberg's statements to Ms. Figueroa were not obtained through Detective Dennis' actions but were voluntarily made after he requested to speak to Ms. Figueroa. *See Lundberg v. State*, 918 So. 2d 444, 445 (Fla. 4th DCA 2006). Thus, the statements were sufficiently dissipated from the involuntary confession and did not violate Mr. Lundberg's Fifth Amendment rights. *See id.* Mr. Lundberg appealed to the Supreme Court of Florida, which denied review. *See Lundberg v. State*, 932 So. 2d 193 (Fla. 2006).

**E**

On May 16, 2008, Mr. Lundberg filed a motion for post-conviction relief in state court under Fla. R. Crim. P. 3.850, raising multiple claims of ineffective assistance of counsel. Relevant to this appeal, he argued that his trial counsel was ineffective for (1) not moving to suppress the statements he made to Ms. Figueroa at the police station because they violated his expectations of privacy; (2) not objecting to the jury instruction on attempted sexual battery; and (3) not objecting to the admission of testimony that bolstered V.C.'s credibility. He also asserted that the cumulative effect of his counsel's deficient representation deprived him of a fair trial.

10

The state court denied the first claim, finding that there was no expectation of privacy in the interview room where Mr. Lundberg was detained.  The state court also rejected the second claim, concluding that the attempt instruction would have allowed the jury to find Mr. Lundberg guilty of a lesser crime, and his counsel's failure to object to the instruction did not prejudice him.  The state court granted an evidentiary hearing on Mr. Lundberg's third claim.

At the evidentiary hearing, Mr. Lundberg's counsel testified about his trial strategy.  He explained that because the state would produce Mr. Lundberg's incriminating statements to Ms. Figueroa, he had to formulate a strategy to discredit V.C.'s testimony.  Part of that strategy was to show that V.C.'s own family was not sure she was telling the truth and that V.C. may have been manipulated by Ms. Cassaude and by law enforcement.  Mr. Lundberg's counsel believed that if he could show the efforts of V.C.'s family to ensure she was telling the truth, he could create reasonable doubt as to V.C.'s credibility.  Following the evidentiary hearing, the state court denied Mr. Lundberg's third claim as well, ruling that counsel's strategic and tactical choices were not deficient.

Mr. Lundberg appealed the denial of post-conviction relief to Florida's Fourth District Court of Appeal, arguing that the state court erred in denying each of his ineffective assistance of counsel claims.  As to the first claim, the Fourth District noted that Mr. Lundberg had waived his *Miranda* rights and did not expressly

11

request privacy with Ms. Figueroa. *See Lundberg v. State*, 127 So. 3d 562, 567 (Fla. 4th DCA 2012). As a result, Detective Dennis did not deliberately create a reasonable expectation of privacy in the interview room where Mr. Lundberg confessed to Ms. Figueroa. *See id*. at 567–68. Counsel therefore was not ineffective in failing to file a motion to suppress on Fourth Amendment grounds. *See id*. The Fourth District summarily affirmed the state court's denial of Mr. Lundberg's second claim with respect to the attempted sexual battery instruction. *See id*. at 570. The Fourth District also affirmed the denial of relief on the third claim, holding that counsel did not render ineffective assistance because he had a valid strategy to discredit V.C.'s credibility. *See id*. at 568–69.

Mr. Lundberg then unsuccessfully petitioned the Supreme Court of Florida to review the Fourth District's decision. *See Lundberg v. State*, 149 So. 3d 1126 (Fla. 2014). Mr. Lundberg filed a petition for a writ of *certiorari* in the United States Supreme Court, which was denied. *See Lundberg v. Florida*, 135 S. Ct. 1459 (2015).

**F**

Mr. Lundberg filed a *pro se* habeas corpus petition on August 25, 2014, raising numerous claims for relief. On November 30, 2015, the district court denied Mr. Lundberg's petition, entered judgment against him, and denied a certificate of appealability ("COA"). Mr. Lundberg applied for a COA from our court, and we granted a COA on the following issues:

12

(1) Whether the state violated the Fifth Amendment by creating a coercive environment to induce Mr. Lundberg to make incriminating statements to Ms. Figueroa, or whether these statements should have been suppressed as the fruit of Mr. Lundberg's involuntary confession to Detective Dennis.

(2) Whether Mr. Lundberg received ineffective assistance of counsel, where trial counsel failed to seek suppression of his statements to Ms. Figueroa based on Detective Dennis' actions in fostering an expectation of privacy.

(3) Whether Mr. Lundberg received ineffective assistance of counsel based on trial counsel's failure to object to the trial court's jury instruction on attempted sexual battery.

(4) Whether Mr. Lundberg received ineffective assistance of counsel, where trial counsel failed to object to hearsay testimony that bolstered V.C.'s credibility.

(5) Whether the cumulative effect of these errors deprived Mr. Lundberg of a fair trial.

App. D.E. 12 at 22–23.  We also appointed appellate counsel for Mr. Lundberg.

## II

"When reviewing a district court's grant or denial of habeas relief, we review questions of law and mixed questions of law and fact *de novo*, and findings of fact for clear error." *Rambaran v. Sec'y, Dep't of Corr.*, 821 F.3d 1325, 1330 (11th Cir. 2016). Under the Antiterrorism and Effective Death Penalty Act, we may only grant habeas relief when the adjudication of claims on the merits in state court are (1) "contrary to, or involved an unreasonable application of, clearly established Federal

13

law, as determined by the Supreme Court of the United States" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"A state court decision is 'contrary to' clearly established federal law when it arrives at an opposite result from the Supreme Court on a question of law, or when it arrives at a different result from the Supreme Court on 'materially indistinguishable' facts." *Owens v. McLaughlin*, 733 F.3d 320, 324 (11th Cir. 2013) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). Under the unreasonable application clause, we "grant relief only 'if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the . . . case.'" *Pope v. Sec'y, Fla. Dep't of Corr.*, 752 F.3d 1254, 1262 (11th Cir. 2014) (citations and some punctuation omitted). To be an unreasonable application of clearly established federal law, the state court's decision "must be objectively unreasonable, not merely wrong; even clear error will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014) (internal quotation marks omitted).

A state court's factual determinations are presumed correct unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). "[T]he 'clear and convincing' standard is a fairly high one," *United States v. Owens*, 854 F.2d 432, 435–6 (11th Cir. 1988), for which the

14

petitioner must present a proposition that is "highly probable." *Fults v. GDCP Warden*, 764 F.3d 1311, 1314 (11th Cir. 2014) (brackets omitted).

### III

Mr. Lundberg argues that the Florida courts violated his Fifth Amendment rights by concluding that his confession to Ms. Figueroa was sufficiently dissipated from the initial illegality (the death penalty threat made by Detective Dennis). We disagree.

The Fifth Amendment provides that an individual has a right against compelled self-incrimination. *See* U.S. Const. amend. V. In *Miranda*, the Supreme Court held that officers are required to inform suspects of their right against self-incrimination and the consequences of waiving that right during a custodial interrogation. 384 U.S. at 467–73. To be admissible, a confession must also "be free and voluntary; that is, must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight." *Bram v. United States*, 168 U.S. 532, 542–43 (1897).

Even when the police comply with *Miranda*, a confession may still be involuntary if, considering the totality of the circumstances, the officers created a coercive environment. *See United States v. Lall*, 607 F.3d 1277, 1285 (11th Cir. 2010) (observing that a court must address the voluntariness of a confession even if a suspect was not in custody and, thus, *Miranda* warnings were not required); *Jarrell*

15

*v. Balkcom*, 735 F.2d 1242, 1252 (11th Cir. 1984) ("[E]ven if a court finds compliance with *Miranda*, the court must still rule on the confession's voluntariness."). An involuntary confession may be suppressed even if it is not the direct product of police misconduct but is merely "derived from the illegal conduct, or 'fruit of the poisonous tree.'" *United States v. Terzado-Madruga*, 897 F.2d 1099, 1113 (11th Cir. 1990) (quoting *Nardone v. United States*, 308 U.S. 338, 341 (1939)). When determining whether evidence is "fruit of the poisonous tree," the relevant question is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of the illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun v. United States*, 371 U.S. 471, 488 (1963) (quotation omitted). Thus, a second confession may be voluntary—and not be the fruit of the poisonous tree—if the coercion surrounding the first statement had "sufficiently dissipated" by a break in the stream of events. *See Leon v. Wainwright*, 734 F.2d 770, 773 (11th Cir. 1984).

In the absence of questioning by law enforcement, we have held that "[v]oluntary and spontaneous comments by the accused, even after *Miranda* rights are asserted, are admissible evidence." *Cannady v. Dugger*, 931 F.2d 752, 754 (11th Cir. 1991). Further, "incriminating statements made in the course of casual conversation are not products of a custodial interrogation." *United States v.*

*Satterfield*, 743 F.2d 827, 849 (11th Cir. 1984), *superseded by statute on other grounds as stated in United States v. Edwards*, 728 F.3d 1286, 1292 (11th Cir. 2013).

Here, the Fourth District correctly identified the governing legal principle from *Wong Sun*, and determined that Mr. Lundberg's confession to Ms. Figueroa was not the "fruit of the poisonous tree." *See Lundberg*, 917 So. 2d at 445. The record reveals that the state trial court suppressed Mr. Lundberg's initial confession to Detective Dennis because her implied threat regarding the death penalty created a coercive environment. But Mr. Lundberg's voluntary request to speak to Ms. Figueroa was likely sufficient to "purge the taint" of Detective Dennis' earlier threat. *See Wong Sun*, 371 U.S. at 488; *see also Cannady*, 931 F.2d at 754. This is particularly so because Detective Dennis was no longer in the interrogation room when Mr. Lundberg confessed to Ms. Figueroa, and because Mr. Lundberg's statements to Ms. Figueroa were "voluntary and spontaneous comments" rather than the result of questioning by law enforcement. In the absence of any on-point Supreme Court authority, it was reasonable for the Fourth District to conclude that Mr. Lundberg's confession to Ms. Figueroa was not obtained through the exploitation of Detective Dennis' primary illegality.

In sum, the Fourth District's holding was not contrary to, and did not involve an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. *See* 28 U.S.C. § 2254(d)(1). Nor was it an

unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d)(2).

## IV

Mr. Lundberg also seeks habeas relief under the Sixth Amendment based on claims of ineffective assistance of counsel. First, he contends that he received ineffective assistance when his counsel failed to seek suppression of the statements he made to Ms. Figueroa. Second, he asserts that he received ineffective assistance when his counsel did not object to the jury instruction on attempted sexual battery. Third, he argues that his counsel rendered ineffective assistance by not objecting or preventing extensive testimony which bolstered V.C.'s credibility.

## A

To establish ineffective assistance, Mr. Lundberg must show that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, to show that counsel's performance was deficient, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687. To show that counsel's actions were unreasonable, a petitioner must establish that "no competent counsel would have taken the action that his counsel did take." *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible

18

options are virtually unchallengeable." *Strickland*, 466 U.S. at 690.  Second, to show prejudice, Mr. Lundberg "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

When reviewing counsel's performance, courts must be "highly deferential" and must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689.  The question is whether "some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial." *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc).

When the *Strickland* deferential standard for measuring performance is viewed through the lens of AEDPA's own deferential standard for habeas corpus claims, the result is a "doubly deferential" form of review, *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011), which asks only "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, 562 U.S. 86, 105 (2011).  We have stated that "it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding." *Gissendaner v. Seaboldt*, 735 F.3d 1311, 1323 (11th Cir. 2013).

**B**

Mr. Lundberg contends that he received ineffective assistance when his counsel failed to seek suppression of the statements he made to Ms. Figueroa in the interview room because those statements were obtained in violation of his expectation of privacy.  He relies on several Florida state cases holding that although a suspect generally does not have an expectation of privacy in a police interview room, such an expectation can arise if the police deliberately foster it.  *See, e.g.*, *State v. Calhoun*, 479 So. 2d 241 (Fla. 4th DCA 1985).  Specifically, Mr. Lundberg asserts that Detective Dennis fostered such an expectation when she exited the interrogation room and said that she would give Mr. Lundberg and Ms. Figueroa privacy, and that Detective Dennis then violated that expectation by recording their conversation with the hidden video camera.

The Fourth District denied Mr. Lundberg's ineffectiveness claim on the merits, ruling that counsel was justified in not seeking suppression on expectation of privacy grounds because Mr. Lundberg enjoyed a diminished expectation of privacy when he confessed to Ms. Figueroa.  *See Lundberg*, 127 So. 3d at 567.  Again, we must defer to that determination unless Mr. Lundberg shows that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law."  28 U.S.C. § 2254(d)(1); *see Kokal v. Sec'y, Dep't of Corr.*, 623 F.3d 1331, 1345–46 (11th Cir. 2010) (reviewing, with AEDPA deference, the highest state-

court decision to have decided the petitioner's claim on the merits).  We recognize that Mr. Lundberg may have had a plausible Fourth Amendment claim, but even "a good Fourth Amendment claim alone will not earn a prisoner federal habeas relief. Only those habeas petitioners who can prove under *Strickland* that they have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ."  *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986).  Accordingly, we conclude that the Fourth District could conclude that counsel's decision not to object did not fall below an "objective standard of reasonableness."  *See Strickland*, 466 U.S. at 687.

Generally, "[t]he expectations of privacy of an individual taken into police custody 'necessarily [are] of a diminished scope.'"  *Maryland v. King*, 569 U.S. 435, 462 (2013) (brackets in original) (quoting *Bell v. Wolfish*, 441 U.S. 520, 557 (1979)). Even though there was no Florida case precisely on point at the time of Mr. Lundberg's suppression hearing, there were multiple cases indicating, as Mr. Lundberg argues, that although a suspect in custody has no expectation of privacy in a police interview room, such an expectation can arise if the police deliberately foster it.  After a thorough review of case law, the Fourth District concluded that whether the police deliberately fostered an expectation of privacy turned on whether the police made a "deliberate attempt to circumvent the defendants' assertions of the right of silence."  *Lundberg*, 127 So. 3d at 567.

21

The Fourth District's analysis is not contrary to, and is not an unreasonable interpretation of, established federal law.    Mr. Lundberg's case is factually comparable to cases in which Florida courts held that the police did not foster an expectation of privacy and thereby declined to suppress the challenged statements. *See Larzelere v. State*, 676 So. 2d 394, 405 (Fla. 1996) (officers did not foster an expectation of privacy simply by placing defendant in a holding cell with her son, where defendant had not asked to speak with her son privately); *Allen v. State*, 636 So. 2d 494, 496–97 (Fla. 1994) (voluntary jailhouse statements between inmates, recorded via electronic eavesdropping, were admissible because "there was no improper police involvement in inducing the conversation nor any intrusion into a privileged or otherwise confidential or private communication"); *Boyer v. State*, 736 So. 2d 64 (Fla. 4th DCA 1999) (police did not foster an expectation of privacy in defendant's jailhouse conversation with his sister-in-law merely because the officer exited the interview room before their conversation, where defendant had not asked for privacy); *Johnson v. State*, 730 So. 2d 368, 370 (Fla. 4th DCA 1999) (police did not violate the Fourth Amendment by recording, without a warrant, conversations between arrestee and his wife in a secretly monitored interview room at a police station because no reasonable expectation of privacy existed in the interview room). Here, Mr. Lundberg was under arrest and handcuffed in a police interview room at the time he spoke to Ms. Figueroa.    As noted by the Fourth District, Mr. Lundberg

22

did not expressly request privacy to speak with Ms. Figueroa. *See Lundberg*, 127 So. 3d at 567.

In contrast, Mr. Lundberg's case is distinguishable from those in which the police deliberately fostered an expectation of privacy. *See, e.g.*, *Cox v. State*, 26 So. 3d 666 (Fla. 4th DCA 2010) (officer fostered and violated defendant's expectation of privacy when she promised co-defendant leniency if he could elicit incriminating statements from the defendant and orchestrated a conversation between the two defendants to that end, but had reassured the defendant that his conversations in the interview room were not being recorded); *Calhoun*, 479 So. 2d 666 (police fostered inmate's expectation of privacy by questioning him about another case because, although he was read *Miranda* rights, he was not informed that he was a suspect in the new case, and police subsequently violated that expectation of privacy by surreptitiously videotaping inmate's conversation with his brother). In Mr. Lundberg's case, the Fourth District concluded that "the surreptitious taping of the conversation in this case was not employed to circumvent the exercise of the defendant's right to remain silent, as he had already relinquished that right when interviewed with the detective." *Lundberg*, 127 So. 3d at 565. For that reason, the Fourth District held that the statements were likely admissible.

Conducting the *Strickland* analysis, the Fourth District explained:

> "While we acknowledge that this is a close case factually, and each case turns on its specific facts, for that very

23

> reason we cannot conclude that counsel made a serious error such that he was not functioning as counsel within the Sixth Amendment. As he stated at the evidentiary hearing, 'I think it's well founded in the case law that you don't have a reasonable expectation of privacy under those conditions . . . . You're in an interrogation room, you're in handcuffs . . . .'"

*Lundberg*, 127 So. 3d at 568. Counsel's statements suggest that he had evaluated the circumstances under which Mr. Lundberg made his incriminating statements and concluded that those statements were admissible, as the state trial court had ruled. In light of the fact-specific case law on the circumstances in which police do and do not foster a defendant's expectation of privacy, it was reasonable for counsel to conclude that attempting to suppress the statements under an expectation of privacy theory was not a viable strategy, and therefore to try to suppress the statements using a fruit of the poisonous tree argument instead.

Although it is possible an objection to the admission of the challenged statements would have been successful, we cannot say on AEDPA's doubly deferential review that the Fourth District was unreasonable to conclude that counsel's decision not to object did not fall below an "objective standard of reasonableness." *Strickland*, 466 U.S. at 687. We therefore agree with the district court that Mr. Lundberg was not entitled to habeas relief on this claim.

24

**C**

Next, Mr. Lundberg asserts that his counsel provided ineffective assistance when he failed to object to the trial court's jury instruction on attempted sexual battery. He argues that there was no evidence to support a conviction for attempted sexual battery, and that the evidence showed either a completed offense or none at all. We disagree.

In Florida, "when the commission of one offense always results in the commission of another, the latter offense is a category-one necessarily lesser included offense." *Taylor v. State*, 608 So. 2d 804, 805 (Fla. 1992). Under Florida law, a jury must be instructed on category one lesser included offenses. *See id.* But if the lesser offense has at least one statutory element not contained in the greater offense, then it is classified as a "category two permissive lesser included offense." *Id.* A jury may be instructed on category two lesser included offenses only if the elements of the offense are alleged in the charging document and sufficient proof of them is presented at trial. *See State v. Wimberly*, 498 So. 2d 929, 931 (Fla. 1986). Attempted sexual battery is a category two, or permissive, lesser included offense of sexual battery. *See* Fla. Std. Jury Instr. (Crim.) § 11.1.

The Florida Rules of Criminal Procedure state that the jury may convict the defendant of attempt to commit an offense "if such attempt is an offense and is supported by the evidence." Fla. R. Crim. P. 3.510(a). Nevertheless, the court "shall

not instruct the jury if there is no evidence to support the attempt and the only evidence proves a completed offense." *Id.* Thus, the trial court could have not instructed the jury on attempt unless the elements of attempt were properly alleged and sufficiently proven. *See* Fla. R. Crim. P. 3.510. *See also Brock v. State*, 954 So. 2d 87, 88–89 (Fla. 1st DCA 2007) (holding that it was error to give an attempted sexual battery instruction where the evidence established a completed crime or no crime at all).

To convict a defendant of sexual battery on a minor under 12 by a perpetrator aged 18 years or older, the state must prove (i) the ages of victim and perpetrator, and (ii) that the defendant committed an act upon the victim in which the anus or vagina of the victim was penetrated by an object. *See* Fla. Stat. § 794.011(1)(h), (2)(a). To prove attempt, the state must show that the defendant completed some act towards committing the crime that went beyond just thinking or talking about it, and that he would have committed the crime except that some event prevented him from committing the crime or that he failed. *See* Fla. Stat. § 777.04(1).

After reviewing the facts and relevant case law, we conclude that the trial court's application of *Strickland* and the Fourth District's summary affirmance were reasonable because Florida alleged attempt when it charged Mr. Lundberg, and there was sufficient evidence at trial to support the attempt instruction. The incident where V.C. woke up to Mr. Lundberg tapping her vagina could reasonably be seen as an

26

attempted sexual battery.  The act of tapping her vagina went "beyond just thinking or talking about" committing a completed sexual battery, and it could be reasonably understood by the jury that Mr. Lundberg was attempting to penetrate V.C. and "would have committed the crime" of sexual battery had she not woken up. Accordingly, the state courts had a reasonable basis for concluding that Mr. Lundberg's counsel did not render ineffective assistance.  We therefore agree with the district court that the rejection of this claim was not contrary to, or an unreasonable application of *Strickland*.

**D**

Mr. Lundberg next argues that he received ineffective assistance because his counsel failed to object to hearsay testimony from several witnesses that bolstered V.C.'s credibility.

Under *Strickland*, counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."  466 U.S. at 690.  "[C]ounsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken might be considered sound trial strategy."  *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc) (internal quotation marks omitted).  For a petitioner to show that his counsel's conduct was unreasonable, he must establish that "no

27

competent counsel would have taken the action that his counsel did take." *Id*. at 1315.

Here, the Fourth District reasonably applied *Strickland* by determining that counsel's failure to object to certain hearsay testimony that bolstered V.C.'s credibility did not constitute ineffective assistance. *See Lundberg*, 127 So. 3d at 568–69. It is true that Mr. Lundberg's counsel likely could have raised successful objections to the testimony in question. For example, V.C.'s parents and aunt testified that they initially did not believe V.C., but later could see that she was telling the truth; V.C.'s father testified that he took V.C. to a counselor, who told him that he believed V.C.'s allegations "without a doubt"; and Detective Dennis testified that she believed V.C. was not deceptive. The Fourth District nonetheless found that counsel's failure to object to hearsay testimony that bolstered V.C.'s credibility constituted part of his trial strategy, *see Lundberg*, 127 So. 3d at 568–69, and we conclude that its ruling did not constitute an unreasonable application of *Strickland*.

Mr. Lundberg's counsel explained that because the trial court did not suppress Mr. Lundberg's confession to Ms. Figueroa, he chose a strategy designed to discredit V.C.'s testimony, and highlight Ms. Cassaude's possible manipulation of V.C. At trial, counsel focused on revealing to the jury all the efforts that V.C.'s parents made to determine that she was telling the truth. Such an approach could permit the jury

28

to conclude that reasonable doubt existed because even V.C.'s parents did not initially believe her. On this record, the Fourth District reasonably concluded that counsel engaged in a reasonable trial strategy based on his consideration of the facts and law of the case. *See Strickland*, 466 U.S. at 690. The district court therefore properly denied relief on this claim.

## V

Finally, Mr. Lundberg argues that the cumulative effect of the alleged errors deprived him of a fair trial. "We address claims of cumulative error by first considering the validity of each claim individually, and then examining any existing errors in the aggregate and in light of the trial as a whole to determine whether one was afforded a fundamentally fair trial." *Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012). Where there is no error in any of the district court's rulings, reversal under the cumulative error doctrine is inappropriate. *See United States v. Taylor*, 417 F.3d 1176, 1182 (11th Cir. 2005). Because we have found no Fifth Amendment or Sixth Amendment errors, we reject Mr. Lundberg's cumulative error argument.

## VI

We affirm the district court's denial of Mr. Lundberg's petition for a writ of habeas corpus.

**AFFIRMED.**